436 So.2d 1141 (1983)
STATE of Louisiana
v.
Earnest KNIGHTON, Jr.
No. 82-KA-0097.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied September 16, 1983.
*1145 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., Bobby Stromile, Asst. Dist. Atty., for plaintiff-appellee.
S. Patrick Phillips, Bossier City, Indigent Defender Bd., Ford Stinson, Jr., Benton, for defendant-appellant.
CALOGERO, Justice.
On April 15, 1981, the grand jury of Bossier Parish returned a true bill, indicting defendant Earnest Knighton, Jr., for first degree murder in violation of La.R.S. 14:30. The twelve member jury unanimously found defendant guilty as charged. The bifurcated trial[1] then continued, and the jury unanimously recommended the death penalty. In so recommending the jury found the existence of two aggravating circumstances[2]: the victim had been killed in the course of an armed robbery and the defendant had knowingly created the risk of death or great bodily harm to more than one person. The trial judge thereafter sentenced defendant to death. Defendant appeals his conviction and sentence assigning thirty-five assignments of error.[3]
We find that these assignments of error, relating to the guilt phase and the penalty phase, lack merit. We therefore affirm defendant's conviction and sentence.
The facts adduced at trial from the testimony of Mrs. Shell, the victim's wife, were as follows. Mr. and Mrs. Shell were working *1146 at the Fina Station on Benton and Shed Road in Bossier City. Between 8:00 and 8:30 p.m. defendant and another man,[4] Anthony White, entered the station. White asked for a package of cigarettes and gave Mrs. Shell a dollar bill. When she returned his change, he walked around the service counter and told her "this is a stick up." Holding a gun, defendant also went behind the counter and asked Mr. Shell where the money was kept. Mr. Shell, who had been talking on the telephone, went into the small room in the back of the station to retrieve the money[5] and gave it to defendant who had followed Mr. Shell to the room. Mrs. Shell heard a shot; Mr. Shell was wounded. From her location Mrs. Shell could not actually see her husband, but said that he offered no resistance and said nothing to provoke defendant into shooting him. Defendant then ran out and told White to bring Mrs. Shell along with him. Anthony White grabbed Mrs. Shell who broke loose at the doorway, retreated back inside the station and locked the door which then separated her from the two thieves. Mr. Shell died as a result of shock from blood loss from a single gunshot wound through the arm, abdomen and chest.
Additional testimony by Wanda Smith, a woman who had driven with defendant, Anthony White and another man, Wayne Harris, to the Fina station, revealed that defendant and White ran from the service station, jumped into the car and had Wanda Smith drive to a motel and obtain a room. There an argument over the disposition of the money ensued. Waving the gun used to shoot Mr. Shell, defendant stated in Wanda's presence that "the man's hand looked like it was fixing to move so I had to shoot him."

ASSIGNMENTS OF ERROR NOS. 1, 2 AND 3
In these assignments defendant contends that the trial court erred in denying his motions for a continuance. Assignment of error number 1 relates to the severance of the two cases immediately prior to trial. Assignment of error number 2 involves defendant's contentions that the defense needed more time to interview witnesses to alleged inculpatory remarks by defendant since defendant was notified immediately prior to trial. Assignment of error number 3 has to do with the State's failure to make answers to discovery timely.
The grand jury indicted both Earnest Knighton, Jr., also referred to as Junior Knighton, and Anthony White for first degree murder. Prior to trial, on June 12, 1981, defense counsel moved for a continuance alleging an inability to examine physical evidence in the possession of the State, among which was a box of .44 caliber shells. This written motion was denied June 16, 1981. On June 22, 1981, the date originally set for trial, defendant moved again for a continuance alleging insufficient time to contact witnesses listed in a supplemental discovery answer filed by the State June 19, 1981. Defendant also stated that defense counsel had not had enough time to determine the date of purchase of a box of .44 caliber shells and that defendants Knighton and White had an irreconcilable conflict and antagonistic defenses, a fact that came to light on June 19, 1981, when White expressed an intention to testify against Knighton. Therefore defense counsel stated that the indigent Defender Board could not continue to represent both defendants. New counsel was appointed for White and the trial judge took the matter under advisement.
On June 24, 1981, because a new attorney had been appointed two days before trial was to begin, the State moved to sever the cases in order to proceed with the trial against Knighton alone. At that point the defense objected to the trial being called on a severed basis. Later that day defense counsel reurged the grounds for the written motions; after both the State and the trial judge agreed to waive the requirement that *1147 the motion be in writing, defense counsel also argued the grounds for the oral motion for a continuance relating to the prejudice caused by the severance just before trial.
The trial court denied the motions stating that defense counsel had previously subpoenaed the witnesses listed in the amended State answer and had the same opportunity as the State to trace the purchase of the .44 shells; concerning the effect of the severance, the judge stated that there was "nothing substantive shown the Court that would suggest that defense counsel is not ready to proceed in this case."
La.C.Cr.P. art. 712 commits a motion for a continuance to the sound discretion of the trial judge. This Court will not reverse his ruling except upon a showing that he abused his discretion and that defendant suffered prejudice as a result. State v. Champion, 412 So.2d 1048 (La.1982); State v. Dupre, 408 So.2d 1229 (La.1982); State v. Haarala, 398 So.2d 1093 (La.1981); State v. Ordonez, 395 So.2d 778 (La.1981).
Defendant argues that he should have been granted a continuance because of the severance of the co-defendant, the failure to make evidence available for inspection or the failure to notify defendant of the witnesses' testimony concerning inculpatory statements until the Friday before the Wednesday trial date. In brief defendant does not state what prejudice he suffered as a result of the denial of the continuance; he does not specify what exact evidence was unavailable. Defendant's brief is cursory and only states that according to the trial court's order the defense was to be given five days after late discovery to examine evidence.
In brief defendant fails to clearly state the manner in which the severance prejudiced his case. According to the State brief, although Anthony White pleaded guilty and was sentenced to life imprisonment, he did not testify at Knighton's trial. Defense counsel had been preparing the defense for both defendants prior to the severance so that he was well versed in the facts of the case. Knighton's defense was not impaired by the severance just before trial. See State v. Moore, 414 So.2d 340 (La.1982).
The State's amended answer to discovery which did finally inform the defense of the possible testimony of witnesses to defendant's inculpatory statements came on June 19, 1981. In ruling on the motion the trial judge stated that the record showed that the three witnesses to be called by the State pursuant to the late discovery answer had previously been subpoenaed by defense counsel. The judge's order relating to late discovery alotting defendant five days after notification of the existence of evidence is a clear reference to corporeal evidence subject to photographing or copying. Nevertheless, the defense received notification on June 19th, five days less a few hours from June 24, 1981, when the trial actually began.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment defendant argues that the lower court erred in dismissing categorically all proposed jurors who indicated an opposition to the imposition of the death penalty.
As defendant correctly points out in brief, this Court has consistently held that opposition to the death penalty is a ground for challenging a prospective juror. We have rejected the argument that a jury qualified under the strict requirements of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), does not constitute a fair cross-section of the community. State v. Brown, 414 So.2d 689 (La.1982); State v. Monroe, 397 So.2d 1258 (La.1981). This Court has repeatedly upheld the validity of the exclusion of jurors properly challenged under La.C.Cr.P. art. 798. See State v. Berry, 391 So.2d 406 (La.1980), cert. denied 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981); State v. Williams, 392 So.2d 619 (La.1980).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment defendant contends that the trial court erred by dismissing for *1148 cause on motion of the State a juror who indicated that he would want to hurry the trial.
After the twelve member jury had been selected, it was decided to select two alternate jurors. Both the prosecutor and the defense counsel were allowed two peremptory challenges. Of the first two prospective jurors called for voir dire, the State excused one and the defense excused one. Two more prospective jurors were called, one of whom was Mr. Cecil Chandler. Chandler stated that he could not stay away from home at night. After Mr. Chandler declared that his mind would be at home rather than on the trial, the prosecutor challenged him for cause. Defense counsel objected that there was insufficient ground for a challenge for cause, but did not question Mr. Chandler further. After examining the other prospective juror, the prosecutor again questioned Mr. Chandler who stated that he would "go along with the rest" in order to "hurry up and get through with it." The trial court excused Mr. Chandler, granting the State's challenge for cause.
The question of the correctness of the trial court's ruling is moot under the facts of this case. Neither of the two alternate jurors who were ultimately chosen participated in the determination of guilt or the recommendation of sentence.
In any event, the trial judge is vested with broad discretion in ruling on challenges for cause; his ruling will be reversed only when a review of the entire voir dire reveals that the judge's exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. See also State v. Labostrie, 358 So.2d 1243 (La.1978). Mr. Chandler's comment that he would probably "go along with the rest of them," in context with his other remarks clearly indicating his reluctance to serve on a jury that might spend the night at the courthouse, provided substantial grounds for the trial judge to doubt the prospective juror's ability to accept and apply the law as given to him by the court. La.C.Cr.P. art. 797(4).
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant argues in this assignment that the trial court erred in commenting on the sufficiency of the evidence with reference to the chain of custody of an item of physical evidence, and in refusing to grant defendant's motion for mistrial as a result of the court's comment.
When the State offered into evidence the bullet purportedly removed from the body of the victim, defense counsel objected, stating that a proper chain of custody had not been established. In overruling the objection and allowing the bullet into evidence, the trial judge stated:
I believe that the evidence does establish there is sufficient chain to allow it to be admitted in evidence. This is not a proof beyond reasonable doubt type situation, and I believe that the proof is sufficient to allow it to be introduced. So the objection is overruled. Let it be filed in evidence as state exhibit number one. And let the objection
Interpreting the judge's language quoted directly above to be a "comment on the evidence," defense counsel moved for a mistrial. The motion was denied.
La.C.Cr.P. art. 772 prohibits comment by the judge "upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." However, this Court has consistently held that the prohibition of article 772 does not apply to the trial judge's reasons for rulings on objections relating to the admission or exclusion of evidence, provided the judge's remarks are not unfair or prejudicial to defendant. State v. Williams, 397 So.2d 1287 (La.1981); State v. Motton, 395 So.2d 1337 (La.1981), cert. denied, 454 U.S. 850, 102 S.Ct. 289, 70 L.Ed.2d 139 (1981); State v. Toomer, 395 So.2d 1320 (La.1981); State v. Quincy, 363 So.2d 647 (La.1978).
*1149 The judge's remarks in the instant case are no more than an explanation of his ruling; they are neither unfair nor prejudicial. The judge merely stated his determination that a sufficient chain of custody had been established. The remarks clearly did not raise an inference as to defendant's innocence or guilt or express or imply the judge's opinion with regard to a material issue. See State v. Williams, 375 So.2d 1379 (La.1979).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
By these assignments defendant asserts that the trial court erred in allowing the introduction of evidence on redirect examination concerning a photographic lineup, in a two-fold contention that the lineup involved the co-defendant White not on trial and that the evidence on redirect exceeded the scope of cross-examination. Although the assignments relate to the photographic lineup, defense counsel in his very short brief also makes an argument concerning the witness' identification of defendant Knighton and co-defendant White in a live lineup.
During direct examination, without a defense objection, Mrs. Shell, the eyewitness and also wife of the victim, after pointing out Earnest Knighton, Jr. in court identified Anthony White as he was brought into the courtroom. On cross-examination, defense counsel closely questioned Mrs. Shell about the two men who had entered the service station, as to what they looked like and which one shot her husband. Counsel also delved into what happened when Mrs. Shell was called down to the police station. After the witness stated that she had looked at pictures, defense counsel questioned her about the photographic lineup, insinuating that the police indicated in some way which was the picture of the suspect. Mrs. Shell had emphatically stated that she had been shown several pictures and had picked out one.
On redirect examination, the prosecutor, after clarifying that the police in no way indicated which photograph was to be selected by Mrs. Shell, focused upon the witness' identification of the co-defendant White. The defense objected with a claim of immateriality. The prosecutor explained that he was seeking to show the jury how many photographs had been given to the witness, after defense counsel had begun the questioning concerning the photographic lineup. The judge overruled the objection. The prosecutor then elicited that Mrs. Shell had been given one group of six or seven pictures and another group of five or six pictures from which to choose. The district attorney then focused upon the live lineup at the Bossier Parish Courthouse. Defense counsel objected that this line of questioning was not proper redirect examination. The prosecutor contended that the questioning dealt with the defense's cross-examination concerning Mrs. Shell's identification and the making of the identification. The judge overruled the objection.
On cross-examination the defense began his questioning relating to the eyewitness' identification. Considering the defense attempt to impugn the photographic identification of the witness during cross-examination, the redirect examination by the State was directed to the subject matter of the cross-examination as required by La.R.S. 15:281. Regardless, defense counsel was afforded the opportunity to recross-examine the witness; he stated that he had no further questions. When defendant has been given the opportunity to recross-examine the witness, this Court has not found an abuse of the trial court's discretion even if the scope of the redirect exceeds that of the cross-examination. State v. Hathorn, 395 So.2d 783 (La.1981).
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 10
Defendant contends by this assignment that the trial court erred in admitting testimony by the defense firearms expert concerning scientific tests that were not included in the State's answer to motion for discovery with no showing that the defense knew of the results or the State's intention to use the test results.
*1150 The State called as a witness Mr. James Clark, an expert who had been retained by the defense to examine evidence in the case. Mr. Clark testified that he had examined a bullet which he determined to be .44 caliber. When the prosecutor asked the witness if he had tested to determine the type of weapon that might have fired the bullet, the defense objected with the contention that defendant had not been notified of the test results or the State's intention to use the results in court pursuant to his Motion for Discovery.[6] The trial judge overruled the objection.
In his discovery motion, defendant had requested results of scientific tests in the possession of the State. The prosecution's answer indicated that a copy of the crime report had been attached. The State simply requested the results of scientific tests from defendant. The record contains no answer by the defense. In brief as well as in court, in response to the defense objection, the State asserted that defendant did not furnish a copy of the results of Mr. Clark's examination of the evidence. Had the results not been given to the State, it would have been impossible for the prosecution to furnish the report to the defense. If the report had been provided to the State, it would certainly have been unnecessary for the prosecution to furnish to the defense the results of the tests run by the defense expert.
Therefore, this assignment is meritless.

ASSIGNMENT OF ERROR NO. 11
This assignment challenges the admissibility of a diagram made by the police and not included in the State's answer to the defense motion for discovery.
In his motion for discovery defendant requested to inspect "books, papers, documents, photographs, tangible objects, buildings, places or copies or portions thereof" within the possession of the State. During the prosecution's examination of Detective Rick Cowen of the Bossier City Police, the witness referred to his diagram of the crime scene based upon measurements that the detective made at the scene of the crime. Defense counsel did not object to the witness' reference to the drawing; counsel objected when the State actually sought to introduce the diagram into evidence after cross-examination of the witness.
Since this is a death case, defense counsel's failure to object until after he had cross-examined the witness does not necessarily bar the complaint to this Court. State v. Felde, 422 So.2d 370 (La.1982). However, as correctly argued to the trial court by the prosecutor, the diagram drawn by the detective from his measurements of the crime scene is the work product of the police and not the type of tangible objects intended by the discovery articles, especially La.C.Cr.P. art. 718. Additionally, defendant makes no showing of prejudice resulting from the disclosure. This Court requires a showing of prejudice before it will reverse a conviction on the basis of nondisclosure of evidence subject to discovery. La.C.Cr.P. art. 921; State v. Ray, 423 So.2d 1116 (La.1982); State v. Mitchell, 412 So.2d 1042 (La.1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 12
By this assignment defendant asserts that the trial court erred in admitting hearsay evidence by Wanda Smith, a State witness.
*1151 Wanda Smith was in the company of defendant Knighton, co-defendant White, and another man, Wayne Williams (alias Wayne Harris), immediately before and after the commission of the crime. Smith testified that after the two men returned to the car from the service station, she drove to the Session Livingston Motel in Shreveport and secured a room for the group. According to Smith, once in the motel room the three men began to argue over the money. After it had been established that Knighton was holding the gun, the prosecutor asked what defendant was doing with the gun and what he had said. Smith replied: "He was waving it, he was waving the gun and he wasI asked Anthony what had happened. And he told me that Junior Knighton had shhot (sic) the man" Defendant objected with the claim that the answer was hearsay. Continuing the examination, the prosecutor elicited the information that defendant was present when White's statement was made. When she was asked whether Knighton could hear what was said, Smith responded that "he said it himself too." At that point defense counsel again objected to the hearsay. The objection was overruled. In response to further questioning, Smith testified twice more than Knighton himself stated that the man's hand moved or looked as if it was about to move prompting Knighton to shoot the victim.
Hearsay is testimony in court of a statement made out-of-court when the statement is offered as an assertion to show the truth of the matters asserted; thus its value rests upon the out-of-court asserter. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Edwards, supra; State v. Martin, 356 So.2d 1370 (La.1978). Although Smith's testimony as to what White said was hearsay, White's statement was made in Knighton's presence; in Smith's statements immediately following, she testified three times that defendant Knighton himself, in that very conversation, stated that he had shot the victim. No conceivable prejudice could have taken place under these circumstances.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 13
With this assignment defendant asserts that the redirect examination of Wanda Smith by the State exceeded the scope of his cross-examination of the witness.
During cross-examination, defense counsel showed Wanda Smith the gun that had been seized at the time that Anthony White was arrested on an unrelated charge. Smith testified that the gun might have been the gun that she had seen lying on the front seat of the car prior to the instant crime and which Knighton had been waving in the motel room after the crime. On redirect examination, the prosecutor questioned Smith about what Knighton had said when he was waving the gun in the motel room; she responded with Knighton's statement that he had shot the victim.
Although the prosecutor argued that the defense had indeed brought up the matter of the gun in Knighton's hand at the motel, the redirect examination could be considered to exceed the content of the cross-examination under La.R.S. 15:281. Regardless, we find no abuse of discretion in the trial court's overruling the defense objection and allowing the State's questions on redirect. Defendant was allowed the opportunity to recross-examine Wanda Smith on the matter at issue. State v. Hathorn, supra.
This assignment is meritless.

ASSIGNMENT OF ERROR NOS. 15-19
With these assignments defendant contends that the trial court erred in permitting improper closing and rebuttal argument by the prosecutor. La.C.Cr.P. art. 774 states:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.

*1152 The state's rebuttal shall be confined to answering the argument of the defendant.
A conviction will not be reversed because of an improper closing argument unless this Court is "thoroughly convinced that the remarks influenced the jury and contributed to the verdict." State v. Sharp, 418 So.2d 1344, 1349 (La.1982). See also State v. Coleman, 406 So.2d 563 (La.1981).
In the beginning of his closing argument, the prosecutor in the instant case made the comment: "The City Police of Bossier, Detective West, Lieutenant Henderson, Detective Sproles put in a lot of man hours working this case." Although the remark does not refer to evidence or lack of evidence at trial, it is nonetheless not a comment that would likely inflame the jurors or influence their judgment to return a guilty verdict. Defense counsel even utilized this comment in his closing argument by calling attention to the fact that policemen who purportedly had worked so long and hard on the case did not testify in court.
Assignments of error numbers 16, 17, 18 and 19 involve the prosecutor's rebuttal argument. In explaining why the State is allowed the last rebuttal argument, the prosecutor explained the burden of proof and used Wayne Harris, the other man in the car with Knighton, White and Smith, as a good example of "using the law to try to show you that something is wrong...." He pointed out that Harris had been brought into and taken out of the courtroom by the Sheriff's Department, and then he made reference to the Fifth Amendment right against self-incrimination. The defense objected that the prosecutor was arguing outside the scope of the evidence. The State countered that defense counsel had argued outside the scope of the evidence and that the defense knew Wayne Harris' exact situation. Defense counsel asked that the court declare a mistrial since the prosecutor's remark constituted misconduct. Having just stated that both counsel "have a right to comment upon what the evidence proves or does not prove," the trial court overruled the defense objections and declined to declare a mistrial.[7]
Defendant complains of these rulings in assignments of error numbers 16 and 17. As this Court stated in State v. Tribbet, 415 So.2d 182, 186 (La.1982):

*1153 A mistrial is a drastic remedy and, except in instances in which it is mandatory, is only warranted if substantial prejudice results which would deprive defendant of a fair trial. State v. Sepulvado, 367 So.2d 762 (La.1979). The determination of unnecessary prejudice lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. State v. Douglas, 389 So.2d 1263 (La.1980).
The prosecutor's remark does not fall within the specified grounds for a mandatory mistrial under La.C.Cr.P. art. 770. The statement does not amount to prejudicial conduct in the courtroom that would make it impossible for defendant to obtain a fair trial under La.C.Cr.P. art. 775. Additionally, prior to the State's rebuttal argument in his closing argument, defense counsel had called the jury's attention to the fact that Wayne Harris had been brought into the courtroom, but had not testified. Defense counsel pointed out that Harris' failure to testify indicated that his testimony would not have helped the State's case. Thus the prosecutor's remark in rebuttal was aimed at answering part of defendant's closing argument relating to Harris' presence. Although the remarks might be considered beyond the scope of the evidence presented at trial, they are certainly not so prejudicial as to warrant the drastic remedy of a mistrial; the comments did not deprive defendant of a fair trial.
In assignment of error number 18 defendant complains of a comment by the prosecutor concerning defense attorneys in general in which he stated that "usually a defense attorney will say what color shoes they were wearing, and the person will say, well I don't know."[8] Although the remark is not proper argument, it is not prejudicial to the point that defendant was denied a fair trial.
In assignment of error number 19 defendant complains of a statement by the prosecutor to the jurors about Knighton running back to the car and the physical layout of the service station as beyond the scope of proper rebuttal argument. This remark, even assuming that it was outside the evidence presented at trial, did not deprive defendant of a fair trial.
There is no merit to these assignments of error.

SENTENCING PHASE

ASSIGNMENTS OF ERROR NOS. 21, 23, 24
These assignments relate to the admission into evidence during the trial's sentencing phase of documents, photographs and fingerprints which allegedly had not been furnished to defense counsel in response to defendant's motion for discovery.
The State argued to the jury an aggravating circumstance that was ultimately not foundthat defendant had "a significant prior history of criminal activity...." La.C.Cr.P. art. 905.4(c). In support of its position, the State sought to introduce the certified record from California which indicated among other crimes those of robbery-second class, probation revocation and grand theft auto. The defense objections based on the prosecution's failure to furnish the documents to defendant were overruled.
Under La.C.Cr.P. art. 718 the State should have supplied the information to defense counsel. If the State fails to comply, the trial judge has the discretion to impose any one of several sanctions under La.C.Cr.P. art. 729.5. State v. Arnaud, 412 So.2d 1013 (La.1982); State v. Strickland, 398 So.2d 1062 (La.1981). The State's failure to comply with discovery procedures does not automatically require a reversal. This Court examines the circumstances of the case to determine whether defendant was prejudiced and if the trial court abused its discretion. State v. Strickland, supra. See also State v. Vaccaro, 411 So.2d 415 (La.1982); State v. James, 396 So.2d 1281 (La.1981).
*1154 Defense counsel argues in brief, and complained below, that the State had not furnished the documents in response to discovery. Thus defendant contends that the trial court erred in admitting them into evidence. The State brief claims that the information was given directly to defense counsel and was not attached to the answer filed into the record. It is therefore impossible to ascertain what information was actually given to defense counsel. The credibility issue aside, defendant has not clearly shown that he was prejudiced by the admission of the California record and other documents. As the State points out in brief, defendant did not allege that the information was incorrect; the defense produced no motion for new trial on the grounds that the fingerprints did not match or that the documentary evidence was erroneous. The defense in brief merely concludes that the evidence was prejudicial and states that counsel was unprepared to cross-examine the witnesses relative to the documents or to make an independent exam of the fingerprints.
Unlike the defendant in State v. Meshell, 392 So.2d 433 (La.1980), this defendant did not contend that his strategy would have been different had he been aware of the allegedly non-disclosed evidence. In fact, defense counsel admitted to the trial judge that some of the documents showing convictions in California had been furnished by the prosecution.[9] In terms of strategy, defendant was therefore put on notice that the State intended to use the past California criminal record. The trial judge recessed after the defense objection in order to read the record. We find no abuse of discretion in allowing in this evidence at the sentencing stage of the proceedings. Additionally, the jury did not find as an aggravating circumstance in this case a significant history of prior criminal activity.
Therefore, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 22
This assignment of error also relates to the admission of California documents, photographs and fingerprints of defendant, allegedly not furnished in response to discovery, during the sentencing phase. Defendant additionally contends that the trial court erred in refusing to grant defendant a recess in order to study the documents.
After defendant objected to the documents the State sought to introduce, the trial judge took a recess to read the record and asked counsel to join him in chambers. Defendant contends that during that recess counsel requested a brief recess in the trial to examine the California documents, but the court indicated that such a request would be refused.
The discussion in assignments of error numbers 21, 23 and 24 relative to admission of the evidence is equally applicable here. Defendant does not here claim that he needed the recess to disprove the authenticity of the documents or to show that the fingerprints did not match. No actual prejudice has therefore been shown by defendant.
This assignment therefore lacks merit.

ASSIGNMENTS OF ERROR NOS. 27, 28, 30 AND 31
These assignments of error relate to the closing argument of the prosecutor during the sentencing phase of the bifurcated trial.
The prosecutor's statement that "[i]t's not every case the District Attorney's office seeks the death penalty, and it certainly is not every case that a jury would ever impose the death penalty," was followed by a defense objection that the statement had nothing to do with the case. The court allowed the general prefacing remarks complained of in assignment of error number 27.
Assignment of error number 28 refers to the prosecutor's statement a little later that *1155 the operation of a convenience store was one of the most hazardous of occupations. Defense counsel objected that this was an argument on matters not in the record; the objection was overruled.
Improper closing argument does not constitute reversible error unless this Court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Sharp, supra. Although these comments complained of in assignments of error numbers 27 and 28 do not concern evidence, lack of evidence or the inferences to be drawn therefrom under La.C.Cr.P. art. 774, the remarks would not inflame the jury and deprive defendant of a fair trial.
Assignment of error number 30 relates to the prosecutor's statement during rebuttal. During the sentencing phase of the trial in his closing argument, defense counsel argued that the fact that defendant did not shoot Mrs. Shell at the service station, but instead ordered the other man to take her along with them when they left the scene of the crime showed a lack of intention to kill. Counsel argued that had Knighton intended to kill Mr. Shell, he would also have killed Mrs. Shell on the spot. The prosecutor in rebuttal argument, in response to the defense statements, stated:
To demand she be shot on the spot to prove they intended to kill Mrs. Shell I think is a ridiculous argument. They said, he said it actually, take her, we are going to take her with us. Why? Why would he want to take her with them. Because just why he killed her husband, he wanted to make sure that he got away, if he ran into any police or anybody else he could stick a gun to her head and say you had better let me go.
Defense counsel objected to the remarks as "speculation as to what crimes may have been committed by anyone," and requested that the jury be instructed to disregard them. The prosecutor alleged that defense counsel had been able to speculate; the judge overruled the objection.
Under La.C.Cr.P. art. 774, inferences which can be drawn from the evidence are legitimate topics in closing arguments. One of the aggravating circumstances argued by the State was that defendant created a risk of harm to more than one person. Mrs. Shell testified that defendant instructed the other man, Anthony White, to take her along as they left the service station. Since the prosecutor argued one logical conclusion to be drawn from the evidence, the challenged comment falls within the proper scope of closing argument.
Assignment of error number 31 complains of the prosecutor's reference in rebuttal argument that the crime was a "cold, calculated robbery and murder." The prosecutor continued: "You are talking about some one who set down and said let's do an armed robbery...." Although there was no testimony that the perpetrators discussed their plans to rob the service station prior to the commission of the crime, it could be argued that the facts showed two men leaving a car with a gun to go to a service station. From those facts one could draw the conclusion that the robbery had been planned or calculated. Attributing the comment to Knighton is perhaps conjectural; however, this Court is certainly not convinced that one such comment so inflamed the jury that the defendant was deprived of a fair trial.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 29
This assignment relates to the trial court's refusal to allow defense counsel to argue against the death penalty by pointing out to the jury the possibility of a mistake. In brief counsel states that he had wanted to call the jury's attention to the fact that after one individual confessed to several rapes in several states, at least two persons serving life sentence for crimes that they did not commit were released from prison. Counsel hoped to show that there was no way for the jury to rectify a mistake should one be discovered after the imposition of the death sentence.
*1156 Actually defense counsel attempted to state that there are instances when a person, who was convicted of a crime and served years in prison, is found to be innocent. The prosecutor interrupted before counsel could complete his thought with an objection that this was improper argument, "just a scare argument and ... it has nothing to do with this case at all." The objection was sustained; however, defense counsel was still able to convey his thought by stating: "The strongest argument I can think of against the death penalty on anybody, against imposing the death penalty specifically on Earnest Knighton is that what are you going to do if you are wrong." The prosecutor exclaimed that the defense had gone right ahead and repeated the argument after the objection to that argument had been sustained. The trial court asked defense counsel to move along at that point.
In State v. Williams, 420 So.2d 1116 (La. 1982), we discounted an assignment of error which complained that the trial judge had refused to allow the defense to use a hypothet with facts unrelated to the case at issue in closing argument. This Court quoted La.C.Cr.P. art. 774: "The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
In the instant case, the trial court did not clearly abuse its discretion by determining that the particular argument of defense counsel would intimidate the jurors and distract them from their essential task under La.C.Cr.P. art. 905 et seq. Additionally, it appears from the record that defense counsel was able to partially make his argument to the jury even though the State's objection to his statements was sustained.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 32
In this assignment of error, defendant contends that it is unconstitutional to impose the death penalty on a defendant when the aggravating circumstances consist only of elements of the crime itself.
The jury verdict recommending the death penalty stated that the jury had found two aggravating circumstances: that the crime was committed when defendant was engaged in the perpetration of an armed robbery and that defendant knowingly created a risk of death or great bodily harm to more than one person. The definition of first degree murder, relevant to the instant case, contains those same conditions as elements of the crime. La.R.S. 14:30(1) and (3).
Defendant argues that allowing the jury to recommend the death penalty after finding only aggravating circumstances which are also elements of the crime is equivalent to giving the jury the unbridled discretion to impose the death penalty. He contends this is clearly contrary to the ruling in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Defendant's argument ignores certain portions of the sentencing provisions of the Louisiana Criminal Code. The jury must find beyond a reasonable doubt that at least one statutory aggravating circumstance exists after a sentencing hearing at which evidence is presented; the jury must consider mitigating circumstances before recommending the imposition of the death penalty. La.C.Cr.P. arts. 905.2, 905.3, 905.5. That death sentence is then always subject to review by this Court. La.C.Cr.P. art. 905.9 and 905.9.1. This procedure comports with guidelines enunciated by the United States Supreme Court. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
We have rejected a similar argument of unconstitutionality in State v. Clark, 387 So.2d 1124, 1132 (La.1980), cert. denied 449 U.S. 1103, 101 S.Ct. 900, 66 L.Ed.2d 830 (1981), reh. denied 450 U.S. 989, 101 S.Ct. 1530, 67 L.Ed.2d 825 (1981).
Notwithstanding the verdict rendered in the guilt portion of the trial, to determine that the sentence of death be imposed the jury must find beyond a reasonable doubt that at least one statutory aggravating *1157 circumstance exists after a sentencing hearing. Defendant has the opportunity to introduce evidence, including that of mitigating circumstances, not introduced at trial. The jury is not bound to find the existence of an aggravating circumstance merely because it found defendant guilty of first degree murder.
Under the relevant Louisiana provisions, the jury is not allowed standardless, unbridled, unreviewable discretion to impose the death penalty when the only aggravating circumstances are also elements of the crime.
This assignment lacks merit.

SENTENCE REVIEW ASSIGNMENT OF ERROR NO. 35[10]
On June 26, 1981, a Bossier Parish jury found defendant, Earnest Knighton, Jr., guilty of first degree murder. Following the sentencing phase of the trial, the jury unanimously recommended the imposition of the death penalty. Under La.C.Cr.P. art. 905.8 on October 14, 1981, pursuant to the jury recommendation the trial judge sentenced defendant to death.
La.C.Cr.P. art. 905.9.1 (La.Supreme Court Rule 28) mandates that this Court review every death sentence for excessiveness. Particularly this Court is to consider the following three factors:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

PASSION, PREJUDICE OR ARBITRARY FACTORS
Defendant argues that the sentence was imposed under the influence of racial prejudice since the victim was white and defendant is black. Defendant's list of first degree murder cases in Bossier Parish shows that, besides this case, the only death penalty imposed by a jury in the parish[11] since January 1, 1976 was imposed upon Alvin Moore, who raped and killed a white woman in her home in front of her four-month-old baby. From this premise defense counsel argues that only black persons who kill white persons receive a death sentence. With nothing more to support his argument, the mere recitation of these facts falls far short of establishing that defendant Knighton's sentence was imposed under the influence of racial prejudice. Furthermore, the jury which imposed this death sentence upon Knighton consisted of blacks as well as whites.
The possible influence of arbitrary factors requires a more thorough treatment. In the opening remarks of his closing argument, the prosecutor stated:
[T]he Court will impose the sentence taht (sic) you do recommend, it is automatically reviewed by the Louisiana Supreme Court to determine if it was excessive or a proper sentence.
Even absent a contemporaneous objection relative to this Comment, we will consider it because of the possibility of prejudicial influence on the jury's recommendation of death. State v. Narcisse, 426 So.2d 118 (La.1983). "Any prosecutor who refers to appellate review of the death sentence treads dangerously in the area of reversible error." State v. Berry, 391 So.2d 406 (La. 1980) cert. denied 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981) (On application *1158 for rehearing). However, this Court has affirmed death sentences in cases in which such a reference by the prosecutor, "although close to reversible error, did not induce the jury to believe that its responsibility was lessened by appellate review." State v. Moore, 414 So.2d 340, 347 (La.1982). See also State v. Mattheson, 407 So.2d 1150 (La.1981); State v. Monroe, 397 So.2d 1258 (La.1981).
The prosecutor's remarks here fall short of comments considered so prejudicial that they constitute reversible error as in State v. Willie, 410 So.2d 1019 (La.1982). See also State v. Robinson, 421 So.2d 229 (La.1982). In Willie the prosecutor argued that all the evidence, motions "and everything will more than likely be reviewed by every appeals court in this state, including the Supreme Court of this state...." 410 So.2d at 1034. The prosecutor continued that federal appeals would follow the state appeals; he stated that the buck did not stop with the jurors, but only started with them. He asked that the jury start the buck rolling and come back with a sentence of death. This Court vacated the death sentence stating that the prosecutor's argument which conveyed the message that the jurors' awesome responsibility was lessened by the existence of appellate review, deprived the defendant of a fair trial in the sentencing phase.
Unlike the lengthy Willie remarks, the remark in the instant case is more analogous to those in State v. Moore, State v. Mattheson and State v. Monroe, supra. In Moore the prosecutor advised the jury "From the next point forward it goes to the court system to be thoroughly reviewed and checked through every court in this land." 414 So.2d at 347. In Mattheson in part of the State's rebuttal argument, the prosecutor declared, "The Supreme Court will review this entire sentencing proceeding, and if the Supreme Court thinks that his honor has made an error, the Supreme Court will send it back for another sentencing hearing before another twelve people." 407 So.2d at 1165. In Monroe the prosecutor in closing argument in the sentencing phase stated that "the Louisiana Supreme Court reviews each and every case in which the death penalty is imposed ...." 397 So.2d at 1270. In all three cases, after "viewing such a reference to appellate review in the context in which the remark was made," State v. Berry, 391 So.2d at 418, this Court held that the remarks had not deprived the defendant of a fair trial in the sentencing phase.
We so find in the instant case. The one remark by the prosecutor did not induce the jury to believe that its responsibility was lessened. The State's argument did not lessen the significance of the role of the jury and its recommendation. The defendant was not denied a fair trial in the sentencing phase of the trial.
At the sentencing phase during his instructions to the jury, the trial judge stated: "Even if you find the existence of alleged aggravating circumstances you may also consider any mitigating circumstances." (emphasis added) This is not a correct statement of the law although there was no objection raised. The jury must consider mitigating circumstances; the jury is required to consider evidence of mitigating circumstances and to weigh it against aggravating circumstances before recommending the penalty. La.C.Cr.P. art. 905.3; State v. Willie, supra; State v. Sonnier, appeal after remand, 402 So.2d 650 (La. 1981).
The effect of the incorrect statement was minimized by the judge's final instruction to the jury. Immediately after the jury had retired, defense counsel requested that the jury be called back for an additional clarifying instruction. The judge admonished the jury:
THE COURT: Ladies and gentlemen, I called you back in at the request of the defense counsel for one additional comment, just so there would be no misunderstanding on the part of any member of the jury. And I do instruct you in connection with all the instructions, this is another instruction that goes with the others, that even though you find, even though you may find that *1159 statutory aggravating circumstances exist it is not mandatory that you impose the death penalty. That is the onlyI wanted to make sure you understood it was not mandatory that that be done. I also want you to understand that you are not to infer that the court has any opinion one way or the other in this matter. But at the request of the defense counsel I did call you back in for that one instruction. Is there any problem with that? I'll ask that you retire again to the jury room.
The last instruction by the judge certainly diminished the possible effect upon the jury of the incorrect use of "may" for "must" in the previous instruction. The judge's final words stressed that the finding of aggravating circumstances did not automatically mandate a recommendation of the death penalty. Although it was not expressly stated in the final instruction, the jury was alerted to its responsibility to consider mitigating circumstances before recommending a sentence to the court. Unlike the instruction in State v. Watson, 423 So.2d 1130 (La.1982),[12] the judge's charge here did not command the jurors to return a death penalty sentence if aggravating circumstances were found. The judge also in the later instruction emphasized that the finding of statutory aggravating circumstances did not mandate a death penalty recommendation. Thus the jurors were sufficiently placed on notice that they were required to consider other factors, mitigating circumstances, before making a recommendation as to sentence. Although the trial court's first instruction was incorrect, the matter was sufficiently corrected.

AGGRAVATING CIRCUMSTANCES
The jury found the existence of two aggravating circumstances pursuant to La.C.Cr.P. art. 905.4(a) and (d):
(a) the offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, aggravated arson, aggravated escape, armed robbery, or simple robbery;
* * * * * *
(d) the offender knowingly created a risk of death or great bodily harm to more than one person;
Defendant argues that the jurors found a legally unsupportable aggravating circumstance when they found that defendant had knowingly created a risk of death or great bodily harm to more than one person and thus the death penalty must be set aside. Defendant is incorrect on this latter point.
At the least the evidence clearly supports the jury finding that the victim was killed during an armed robbery, the other aggravating circumstance found by the jury. It is therefore unnecessary to determine whether the jury erred in finding that defendant created a risk to more than one person. If the jury finds more than one statutory aggravating circumstance and one is clearly supported by the record, the sentence need not be overturned because one of the additional aggravating circumstances is not supported.[13]State v. Lindsey, 428 So.2d 420 (La.1983); State v. Narcisse, supra. See also State v. Moore, supra; State v. Mattheson, supra; State v. Monroe, supra; State v. Williams, supra; State v. Martin, 376 So.2d 300 (La.1979), cert. denied 449 U.S. 998, 101 S.Ct. 540, 66 *1160 L.Ed.2d 297 (1980), reh. denied 449 U.S. 1119, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981).

PROPORTIONALITY OF DEATH SENTENCE
The final focus of this Court's sentence review in a capital case is a determination of whether the sentence in the instant case is disproportionate to the penalty imposed in similar cases in the same parish. Both the crime and the defendant must be considered. An inference of arbitrariness arises when a jury's recommendation is inconsistent with sentences imposed in similar cases from the same jurisdiction. State v. Sonnier, 380 So.2d 1 (La.1979).
Pursuant to Supreme Court Rule 28 § 4, the State filed a sentence review memorandum which listed twelve first degree murder cases in Bossier Parish in which the sentence was imposed after January 1, 1976. However, in one of these the charge was amended to second degree murder as a result of changes in the law relating to the definition of first degree murder.[14] Of the remaining prosecutions, four involved family arguments.[15] Only one of those resulted in a verdict of first degree murder.[16] One case involved a fight between two men who had both been heavily drinking.[17]
Only one case involved an armed robbery in which defendant shot the victim, State v. Gibson.[18] However, there were definite homosexual overtones there. The victim and defendant met at a bar and defendant accompanied the victim home to his trailer. After both men fell asleep, defendant awakened, shot the victim, and stole money and jewelry. Defendant pleaded guilty to second degree murder and was sentenced to life imprisonment. Another case with homosexual overtones involved a robbery in which the victim was beaten to death with a stove pipe.[19]
Only three prosecutions, including the Knighton case, resulted in death sentences in Bossier Parish. The first of these, State v. Collins, occurred under the mandatory death statute later held unconstitutional. This Court vacated that death sentence and defendant was resentenced to life imprisonment. State v. Collins, 370 So.2d 533 (La. 1979). The second death penalty from Bossier Parish was recently affirmed by this Court in State v. Moore, supra. Alvin Moore had entered the victim's house with a knife, had vaginal and anal intercourse with her, robbed her, and then stabbed her numerous times in front of her four-month-old baby. Moore, a black defendant, had also challenged his sentence as being racially motivated and pointed to other cases involving white defendants which did not result in the death sentence, particularly State v. Gaskin[20] and State v. Thomley[21] two other first degree murder prosecutions in Bossier Parish listed in the State's memorandum.[22] This Court sufficiently distinguished the cases and upheld the death sentence in the Moore case. Although defense counsel in the instant case also argues that Gaskin and Thomley committed a more heinous crime than did Knighton and only received a sentence of life imprisonment, the distinctions between the two cases are clear. Gaskin and Thomley were only teenagers when they, along with a third youth, grabbed a young black girl, threw her into their car, had her perform oral sex, then robbed and killed her. At the time of the crime Gaskin *1161 and Thomley were seventeen and eighteen years of age respectively. Neither of them had prior criminal records. Knighton is a thirty-five year old man with an extensive prior criminal record.
According to the Capital Sentence Report this is Knighton's fifth felony conviction. Earnest Knighton received adequate moral and social influence from his mother and three siblings. He has a tenth grade education. Although defendant contends that he had no problems in school, his juvenile record refutes that contention. His employment history consists of unskilled labor jobs lasting only short periods of time. He is not married, but has lived in a stable, common law relationship for three years. Although Knighton denies any drug habit or prior criminal activity, his juvenile record and extensive adult record, including crimes from felony burglary and possession of dangerous drugs to grand theft auto, belie defendant's statement. The only feeble attempt to present mitigating circumstances came in the defense's closing argument when counsel referred to the testimony of Mrs. Knighton, defendant's mother, who testified only that her son had lived with her part of the year of 1980. Although counsel argued that Mrs. Knighton testified that defendant had lived mostly with her and had held down a steady job, the prosecutor correctly objected that the mother had not so testified.
The determination of proportionality is aimed at guarding against arbitrary and capricious action by a jury. State v. Lindsey, supra. Here Earnest Knighton, Jr., a convicted felon, shot and killed Mr. Shell during the course of an armed robbery. After a consideration of both the crime and the defendant, we are unable to conclude that the death sentence in the instant case is disproportionate to the penalties imposed in other first degree murder cases in Bossier Parish.

ASSIGNMENTS OF ERROR NOT ARGUED OR BRIEFED

ASSIGNMENT OF ERROR NO. 6
In this assignment defendant contends that the lower court erred in admitting the bullet allegedly removed from the deceased victim without having established a satisfactory chain of custody of the evidence. Although it is listed in defendant's brief, this assignment was not argued; defense counsel only states that the bullet was removed from the crime lab locker.
Dr. George McCormick, II, coroner of Bossier Parish, testified that he removed the bullet from beneath the skin on the left side of the body of the victim during the autopsy. Dr. McCormick identified the bullet as the one that he had removed from the body, placing the Arabic numeral 70 denoting the autopsy number and the Roman numeral I denoting the number of bullets taken from the body. He had placed it in a screw cap jar used in the morgue sealed by two pieces of tape, one around the lid, and labeled the jar with the autopsy number, the name, bullet, and his initials on one side and the date of removal and his signature on the other side. Miss Young of his office had delivered the jar to the Northwest Louisiana Crime Lab. Dr. McCormick also noted in testimony that the tape on the jar had been previously opened, "apparently at the crime lab." Mr. Raymond Cooper, a criminalist at the Northwest Louisiana Crime Lab received the bullet from Miss Young and remained in possession of the bullet which was kept in Mr. Cooper's evidence locker. However, Mr. Cooper testified that he was informed that the bullet had been removed while he was on vacation for someone to examine.
When the State sought to offer the bullet into evidence, the defense objected that the complete chain of custody had not been established; the objection was overruled. This Court set out the rule of the admissibility of demonstrative evidence in State v. Paster, 373 So.2d 170, 177 (La.1979):
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by *1162 chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence.
Dr. McCormick specifically identified the bullet as the one that he removed from the victim. There is therefore more than adequate identification. The only possible break in the chain of custody relates to the bullet's removal from the locker when the defense expert, Mr. James Clark, examined the bullet. This assignment is meritless.

ASSIGNMENT OF ERROR NO. 14
Defendant contends in this assignment that the trial court erred in admitting into evidence photographs of the severed co-defendant, Anthony White.
During cross-examination of Wanda Smith, defense counsel showed her the .38 caliber revolver seized from White when he was arrested for an unrelated crime. Counsel appeared to be attempting to establish that this gun was the one she had seen defendant waving at the motel after the instant crime. On redirect examination, the prosecutor showed Ms. Smith a photograph of Anthony White, asked her whether she recognized him, and then asked her what was in White's belt in the photograph. The defense objected on the grounds of irrelevancy; the State argued that the defense had paraded out the .38 revolver taken from White in an effort to make insinuations. After the trial court overruled the defense objection, the witness replied that there were two guns in White's belt in the photograph. After she was shown an enlargement of the two guns, Wanda Smith stated that it could have been the larger of the two that Knighton had in his hand at the motel. She then stated that it could have been either of the two guns in defendant's hand.
Under La.R.S. 15:281 the redirect examination is confined to "the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination...." The questioning concerning the two guns in White's belt in the photograph was directly related to the cross-examination of this witness. The defense had even stipulated that the .38 caliber revolver had been taken from White. Although that gun was not actually relevant to Knighton's trial, defendant had introduced the subject of the .38 caliber gun seized from the severed co-defendant Anthony White.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 20
In this assignment of error, defendant contends that the trial court erred in qualifying the State's witness as an expert in the comparison of latent fingerprints, or in fingerprint comparison and identification.
During the sentencing phase of the bifurcated trial, the State called Newman Joseph Landry, Jr., to testify that the fingerprints contained in the California documents matched those of defendant taken by the Bossier Parish Sheriff's Department. Mr. Landry testified that the perfect prints taken by the two police departments in Louisiana and California were the same. Latent fingerprints were never an issue.
Mr. Landry testified that he had undergone training with the Federal Bureau of Investigation, including three months in a specialized school for fingerprint examiners. He had been certified as an F.B.I. fingerprint examiner. In 1979 he moved home to Bossier Parish and worked for the identification division of the police department. He completed a thirty day course in the identification division in Shreveport. Although Mr. Landry admitted that he had not been certified by the International Association of Identifiers, that certification required that a person first be qualified in court as an expert before being eligible to take the certification test. Mr. Landry had not been an F.B.I. certified latent agent; however, this match did not involve latent fingerprints. The witness' job with the Federal Bureau of Investigation had been to classify prints and search for matches in the files of prints sent from police departments across the country. Although Mr. Landry had not been previously qualified in court as an expert witness, the court recognized him as a fingerprint examiner.
*1163 The acceptance of a witness as an expert is a matter entrusted to the discretion of the trial judge; his ruling will not be overturned on appeal absent an abuse of discretion. State v. Michel, 422 So.2d 1115 (La.1982); State v. Coleman, 406 So.2d 563 (La.1981). We find no abuse of discretion in the trial court's acceptance of Mr. Landry as an expert in fingerprint comparison. The witness had considerable training and experience. Defendant's objection was directed toward Mr. Landry's lack of certification and lack of experience as a qualified expert fingerprint examiner. The F.B.I. latent fingerprint agent certification would be inapplicable here where only clear prints taken by police departments are at issue; the I.A.I. certification had as a prerequisite the qualification in court as an expert. Mr. Landry compared the clear prints to find that they belonged to the same individual; this had been his actual job at the Federal Bureau of Investigation.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 25
This assignment contends that the trial judge erred in allowing the State to refer back to evidence offered in the guilt phase of the trial during the sentencing phase. Defendant complains that the prosecutor in his closing argument in the sentencing phase referred to evidence that had not been introduced during that phase of the bifurcated trial.
At the beginning of the prosecutor's closing argument, defense counsel stated that he would object to any reference or any consideration by the jury of any evidence other than that introduced during the sentencing phase. The prosecutor responded that he had stated in his opening statement that he would offer everything from the guilt phase and pointed out that the law provided that the jury consider all evidence from the guilt phase. The prosecutor had in fact told the jury in his opening statement in the sentencing phase: "What we really do is just offer all of the evidence that you ahve (sic) already heard and you may consider all of that evidence in your deliberations."
Relative to the sentencing hearing, La.C. Cr.P. art. 905.2 states that the "jury may consider any evidence offered at the trial on the issue of guilt." In State v. Monroe, supra, this Court found meritless defendant's complaint that the State introduced the same evidence at the guilt and at the sentencing phase of the trial.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 26
In this assignment defendant contends that the trial court erred in allowing the State to introduce additional evidence at the sentencing hearing after closing arguments had begun.
Following the interchange in the sentencing phase concerning the State's introduction of evidence originally offered in the guilt phase, the prosecutor asked that the "case be re-opened to offer everything that took place before." Defendant objected that it was too late after the beginning of closing arguments to offer evidence. The court allowed the prosecutor to proceed as requested.
As far as applicable, the procedure and order of the sentencing hearing should conform to that of the trial. La.C. Cr.P. art. 905.2. In its discretion the trial court may permit the introduction of additional evidence prior to argument. La.C. Cr.P. art. 765. This Court has thus found no abuse of discretion when the trial judge allowed the State to present additional evidence after the prosecutor had rested his case. State v. Bonnano, 373 So.2d 1284 (La.1979); State v. Rhodes, 337 So.2d 207 (La.1976). Article 765, however, only allows the introduction of additional evidence "prior to argument." Here the prosecutor requested to re-open the case after he had begun his closing argument. Nevertheless, the court's action does not constitute reversible error because the evidence "introduced" was evidence which the jury had already heard in the guilt phase of the trial and which the jury was statutorily allowed to consider in determining sentence.
*1164 There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 33
With this assignment defendant contends that the trial court erred in refusing to appoint new counsel for the purpose of pursuing post-trial motions alleging incompetent counsel. Following trial, the defense moved for the appointment of new counsel to present the issue of the incompetence of trial counsel. The trial court denied the motion.
This Court normally refers an allegation of ineffective assistance of counsel to a petition for post conviction relief. State v. Brown, 384 So.2d 983 (La.1980). In denying the motion for new counsel, the trial court stated that the defendant had "his right of appeal and other rights if necessary." Stating that it was not "appropriate in this step of the proceeding," the judge, referring to the district attorney's contention that defendant could file writs of habeas corpus and numerous other pleadings, stated that defendant could file "whatever he may have the opportunity to file." The record does not indicate that defendant filed any petition alleging instances of incompetence of counsel.
However, the issue raised here is not the competence of counsel, but whether the trial court should have appointed counsel for the purpose of raising the issue. The trial court stated that the "bald statement" by defendant that he felt that counsel was ineffective was not sufficient grounds to grant the defense motion. The judge stated for the record that he saw no evidence of inadequate defense during the trial. The trial court said:
I don't think it is appropriate to have him have the right at this stage to have another attorney appointed to go through this entire proceeding before anything else is done to see whether or not he wants to file for a new trial.
The record shows only a blanket allegation of incompetence levied by defendant against his counsel and no specifics regarding the alleged incompetence. Under the circumstances, the trial court did not err in refusing to appoint new counsel at that stage of the proceedings.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 34
In this assignment defendant alleges that the trial court erred in denying his motion for a new trial.
Defendant makes two contentions in his motion for a new trial that the verdict was contrary to the law and the evidence: 1) in that the death penalty was imposed after the factual finding of only those aggravating circumstances which comprise the definition of first degree murder; and 2) in that the evidence did not prove beyond a reasonable doubt that the alleged shooting was done with the intent to kill.
The first contention was discussed at length in the treatment of assignment of error number 32. The second contention is likewise without merit. In order to show the intent to kill, the eyewitness, the wife of the victim, testified that her husband did nothing to provoke the shooting. The witness Wanda Smith testified that Knighton, by his own admission, stated that he shot the victim because Mr. Shell's hand moved; this belies the absence of intent. There was no evidence offered to show an accidental or inadvertent shooting. Specific intent may also be inferred from the evidence and circumstances of the case, La.R.S. 15:445; here the fact that the accused pointed a weapon at the victim and shot him at close range was sufficient. State v. Williams, 383 So.2d 369 (La.1980), cert. denied 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981), reh. denied 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981); State v. Procell, 365 So.2d 484 (La.1978).
This assignment lacks merit.

Decree
For the foregoing reasons, we find defendant's assignments of error relative to his conviction and sentence without merit. The conviction and sentence are affirmed.
*1165 CONVICTION AND SENTENCE AFFIRMED.
DENNIS, J., concurs.
LEMMON and BLANCHE, JJ., concur and assign reasons.
LEMMON, Justice, concurring.
Defendant's assignment of error number 32 (that the death penalty cannot be constitutionally imposed when the only proved aggravating circumstance is also an essential element of the crime) is not answered by State v. Clark, 387 So.2d 1124 (La.1980), because the murder by Clark was committed before the 1979 amendment to La.R.S. 14:30 added aggravated circumstances as an essential element of first degree murder. However, the contention is answered by State v. Sawyer, 422 So.2d 95 (La.1982).
The 1979 amendment provided limitations on the jury's exercise of sentencing discretion by narrowing, in the guilt phase, the class of murderers who are even eligible for consideration for the death penalty. This provision serves the same discretion-channeling purpose as La.C.Cr.P. art. 905.3's requirement that the jury find the existence of at least one aggravating circumstance beyond a reasonable doubt before the jury can consider recommending the death penalty. The new requirement that an aggravating circumstance be found in the guilt phase simply excludes by statute (rather than by jury discretion) many murderers from the "death eligible" category at an earlier point in the proceedings, in effect making second degree murders out of many crimes which formerly would have been first degree murders.
Since the 1979 amendment channels the jury's discretion more effectively and efficiently than other schemes patterned after the procedure approved in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the improved procedure is certainly not subject to constitutional attack as giving the jury unbridled discretion to impose the death penalty.
BLANCHE, Justice (concurring).
I concur in the result but disagree with the majority's handling of two aspects of the defendant's sentencing proceeding.
We should abandon our previous position that where one aggravating circumstance is proved beyond a reasonable doubt, it is unnecessary to consider any allegations of error with respect to the jury's finding of any other aggravating circumstances. Inquiry by this court as to whether all aggravating circumstances found by a jury are supported by the evidence is essential to our constitutional and statutory mandate to review a jury's recommendation to determine if the sentence was influenced by passion, prejudice, or any arbitrary factor. Supreme Court Rule 28, § 1(a); La. Const. art. I, § 20. Accordingly, it was error for the majority in this case to refuse to determine whether one of the aggravating circumstances returned by the jury, that "the offender knowingly created a risk of death or great bodily harm to more than one person", was supported by the evidence.
Secondly, it is this writer's opinion that the language in La.C.Cr.P. art. 905.4(c) "significant prior history of criminal activity" is unconstitutionally vague. As explained in my recent dissent in State v. James, 431 So.2d 399 (La.1983), the phrase fails to provide sufficiently clear and objective standards necessary to control the jury's discretion in imposing the death penalty.
In the present case, the state introduced documentary evidence of defendant's prior criminal record in an effort to prove the existence of this unconstitutional aggravating circumstance. Pursuant to Supreme Court Rule 28, § 1(a) this court must determine whether the introduction of evidence in support of that unconstitutional aggravating circumstance introduced an arbitrary element into the jury's recommendation of the death penalty. More properly stated, the question becomes: Was the state's introduction of evidence of defendant "significant prior history of criminal activity" inconsequential to the jury's recommendation of death beyond a reasonable doubt?
*1166 Under the present set of facts, it appears that the introduction of defendant's prior criminal record was harmless beyond a reasonable doubt. Although the jury was asked to consider the defendant's criminal record in order to find a significant prior history of criminal activity the jury failed to return that aggravating circumstance. Obviously, the improperly admitted criminal record was inconsequential to the jury's recommendation of the death penalty beyond a reasonable doubt. Accordingly, I respectfully concur in the affirmance of defendant's conviction and sentence.
NOTES
[1] Since defendant was found guilty in a capital case, a sentence hearing was required under La.C.Cr.P. art. 905 et seq.
[2] The State had also argued a third aggravating circumstance relating to defendant's significant prior history of criminal conduct under La.C. Cr.P. art. 905.4(c). The jury, however, did not find the presence of that aggravating circumstance.
[3] Assignments of error numbers 14, 20, 25, 26, 33 and 34 were neither briefed nor argued. Since this case involves the imposition of the death penalty, this opinion will treat these assignments as well as those argued in brief.
[4] The other man, Anthony White, was indicted with Earnest Knighton, Jr. However, his case was severed from that of Knighton immediately before trial began.
[5] The money consisted of $641.85 taken in the robbery.
[6] Defense counsel objected and the prosecutor responded as follows:

MR. PHILLIPS: May it please the Court, at this time we will enter the same objection that if the state intends to utilize the evidence of scientific test that it is necessary under the discovery statute that the defense be given notice of such attempt, pursuant to the request of our Motion for Discovery, we did request any scientific test or anything that have (sic) been run, and it is the continuing obligation of the state to furnish that to us, of their intent to use it, and the existence of it, continues up to this time. We have never received any such notification.
MR. BROWN: Your Honor, how can someone who hired their own man to do a test and had him do a test for them and their (sic) are supposed to furnish us the test results, which they haven't done, object to us calling their man to tell us what results he gave to them, and say we didn't give them notice of what their own man said. That doesn't make any sense.
[7] The following excerpt contains the pertinent dialogue:

MR. BROWN: ... We have to do it all, so yes we do get the final or rebutting argument because everything falls upon us to do it. That's why the law is set up that way. We have the burden of proving everything and then when they get up and take potshots at what we did we get the right to come back and try to point out exactly what they are doing. A good example of using the law to try to show you that something is wrong and all this is Wayne Harris, or Wayne Williams, or Robert Wayne Williams. You saw him brought in the courtroom by the Sheriff's Department and taken back out by the Sheriff's Department upstairs, and you heard about all the fifth amendment right against self incrimination, that nobody can be made to take the witness stand and testify when they are accused of a crime.
MR. PHILLIPS: May it please the Court, I object to this line of argument, there is no evidence that Mr. Harris was in the custody of the Sheriff or taken upstairs or has fifth amendment privileges or is charged with anything.
MR. BROWN: Mr. Phillips knows
MR. PHILLIPS: He was simply brought into the courtroom and his person was exhibited to the jury.
MR. BROWN: Mr. Phillips knows
MR. PHILLIPS: I think it is improper to argue matters outside the scope of the evidence.
THE COURT: Of course, the jury had been here
MR. BROWN: Mr. Phillips argued outside the scope of the matter because he knows exactly Wayne Williams' situation.
THE COURT: All right, the jury was here when and viewed the evidence and heard the evidence. Both counsel have a right to comment upon what the evidence proves or does not prove.
MR. BROWN: But you saw Wayne Williams brought into the courtroom by the Sheriff.
MR. PHILLIPS: Please the Court I'm going to request at this time that the statements by the D.A. that I fully know the situation of Wayne Williams is totally uncalled for. It is a matter that is described as prosecutorial misconduct, and ask the Court to declare a mistrial in the case at this time.
[8] In his argument, the prosecutor was referring to Mrs. Shell's testimony, particularly her identification of Knighton. In an attempt to buttress his witness' identification of defendant, the prosecutor began to discuss the defense attorney's tactics.
[9] In court following the objection to the documents, defense counsel conceded that he was furnished with parts of one document but not the fingerprint or photographic evidence. Although it is unclear what exactly defense counsel received, the prosecution did furnish at least partial documentation by counsel's own admission.
[10] Defendant's assignment of error number 35, which contends that the sentence of death imposed upon Knighton was disproportionate to other sentences imposed on defendants convicted of more heinous crimes involving aggravating circumstances greater in both number and severity than those with which Knighton is charged and results in a verdict which was directly a result of passion, prejudice and racial considerations, is treated in the following discussions which review the sentencing phase.
[11] One other death sentence was imposed by a jury in Bossier Parish under the mandatory death statute later declared unconstitutional. The sentence was vacated and the defendant was resentenced to life imprisonment.
[12] In State v. Watson, 423 So.2d 1130 (La. 1982), the judge instructed the jury:

But if that doubt does not exist in your minds as to whether or not the State has established aggravating circumstance or circumstances, then you are obliged to return a sentencing recommendation of death.
The incorrect statement of law was held to deprive the jury of its sentencing discretion; the death penalty was set aside.
[13] As of this time the United States Supreme Court has not rendered a contrary decision. In Zant v. Stephens, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982), the United States Supreme Court did not render an opinion in this issue. Rather the Court certified the question to the Georgia Supreme Court in order to obtain a statement of the premises that support that Court's conclusion that the death sentence is not impaired by the invalidity of one of the statutory aggravating circumstances found by the jury.
[14] State v. Hawthorne, 345 So.2d 1170 (La. 1977).
[15] State v. Robertson, Twenty-Sixth Judicial Dist.Ct. No. 55,783; State v. Clark, 375 So.2d 383 (La.1979); State v. Newman, Twenty-Sixth Judicial Dist.Ct. No. 56,575; State v. Talley, Twenty-Sixth Judicial Dist.Ct. No. 57,660.
[16] State v. Clark, supra.
[17] State v. Hudson, aff'd 361 So.2d 858 (La. 1978), rev'd on other grounds 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
[18] Crim.Dist.Ct. No. 54,268.
[19] State v. Burnham, 369 So.2d 1331 (La.1979).
[20] 412 So.2d 1007 (La.1982).
[21] 420 So.2d 685 (La.1982).
[22] Although the State listed State v. Gaskin and Thomley as one of the twelve cases, in reality the two cases were tried separately and thus there were actually thirteen first degree prosecutions in Bossier Parish.