396 So.2d 1307 (1981)
STATE of Louisiana
v.
Robert NORWOOD.
No. 80-KA-2288.
Supreme Court of Louisiana.
April 6, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Marvin Optowsky, Louise S. Korns, J. Kevin McNary, Asst. Dist. Attys., for plaintiff-appellee.
Loyola Law School Clinic, William O'Hara, III, Linda B. Adams, Michael S. Gallagher, John M. Standridge, New Orleans, for defendant-appellant.
GARRISON, Justice Ad Hoc[*].
The principal issue in this case involves the defendant's argument that the trial court erred in denying his request for a mistrial. It is contended that the defendant was substantially prejudiced by the State's failure to disclose its intention to use certain identification testimony. He had filed a formal motion for pre-trial discovery and a bill of particulars which specifically asked: "Was there a pre-trial line-up or other pre-trial identification of the defendant?" The State's response to this question was: "None."
*1308 Defense counsel argues that a spontaneous and impromptu identification of the defendant by some of the witnesses caused, in fact, by the defendant's own bizarre actions when being taken through the stationconstituted a custodial line-up. He argues, and this is the thrust of his defense, that he would have moved to suppress evidence of identification had he known about this prior to trial. The short reply to this can be made, at the outset, that the evidence indicates that a custodial line-up at the station in fact simply never occurred.
The defendant was charged by bill of information with four counts of armed robbery and one count of being a convicted felon in possession of a firearm. On June 10th, 1980, he was tried on the four armed robbery counts by a jury of twelve persons and found guilty on all charges. He was sentenced to serve seventy-five years at hard labor on each count, to run concurrently.

I.
The facts of this case are relatively simple. On February 15th, 1980, at approximately 3:00 a. m., the office of the Amoco service station on the corner of Martin Luther King Drive and South Claiborne in New Orleans was entered by a man carrying a .357 Magnum revolver. He required all of the occupants to give him their money.
At the time of the robbery Robert Williams was fixing a tire on the tire rack outside of the service station office. Observing the hold-up occurring inside, he promptly went to a nearby liquor store and called the police. By the time he returned to the service station, the police already had arrested the defendant.
At the trial each of the victims testified that as they left the service station office they observed the man who had just robbed them in the process of being arrested by the police outside the station. At that time he was heard to say, "Ya'll got me."
The police at once apprehended and handcuffed the defendant. While they were walking him to the patrol car, the victims came running out, pointing to the defendant, saying in effect, "That's him". They subsequently were interviewed at the Sixth District Police Station.
What the defendant seeks to characterize as a "custodial line-up" then occurred at the district station. The defendant was being brought in to be booked while the witnesses were being interviewed. A police officer, separated from the victims in another area of the station, was taking the defendant to the bathroom. The defendant upon seeing the victims shouted to them in effect, "Let me take these handcuffs off and I'll beat all of ya'll up." At this point, during the defendant's explosive display, at least one of the witnesses, Charles Stevens, who was in the process of being interviewed by officer Yvonne Chaney, was asked by that officer whether the screaming, threatening man was the one who had robbed him. He replied affirmatively to this question. The record is imprecise regarding the exact occurrence during this commotion but it does appear that several other victims participated to the same extent, and to the same effect, in such a spontaneous colloquy. What is more significant, inasmuch as this incident plainly was not initiated by the police, is that at least two of the victims who were at the police station testified with considerable more precision that they were not asked to make any identification of the defendant there.

II.
The identification which occurred at the scene of the robbery in no sense constituted a custodial line-up. Nor does defendant attempt to so argue. Accordingly, we are concerned only with the fact that the foregoing degree of identification did occur at the police station.
What the defendant seeks to describe as a custodial line-upto the extent that it can be referred to as a "line-up" was instituted not by the police but by the defendant himself. It was he who yelled threats to the victims and, in so doing, called their attention to him. Thus, it was heand not the policewho virtually initiated *1309 such identification as did occur at the police station.
Taking the above testimony as a whole it is apparent that whatever occurred at the Sixth district, it certainly was not in any sense a custodial line-up. The state's Bill of Particulars was satisfactory, therefore, in responding that no such line-up occurred.
The defendant points out that under La.C.Cr.P. Art. 729.5 the State has a continuing duty to disclose evidence requested by the defendant and under that Article, he contends, the failure to comply should have resulted in a mistrial pursuant to defendant's request. However, this Article does not mandate a mistrial. It merely indicates that a mistrial is simply one of the options available to the court and within the court's discretion.[1] Inasmuch as the trial court had the discretion to deny the defendant's request for a mistrial or admonition, a showing of prejudice by virtue of the court's adverse ruling is required before a reversal of the conviction would be in order. See State v. Kimble, 375 So.2d 924 (La.1979); State v. Qualls, 353 So.2d 978 (La.1977).
Not only was the State's Bill of Particulars entirely satisfactory in responding that no custodial line-up had occurred but, it should further be noted, nowhere in the record are there grounds for suppression of any of the numerous identifications made in this case. Counsel for defendant's argument that he would have moved to suppress the non-existent "custodial line-up" is groundless and the defendant suffered no prejudice from any action of the State. The defendant's appeal is without merit.
The conviction and sentence are affirmed.
LEMMON, J., concurs.
NOTES
[*] Judges Garrison, Chehardy, and Barry of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche, and Lemmon.
[1] La.C.Cr.P. Art. 729.5 Failure to comply; sanctions.

A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal as may be appropriate...