688 So.2d 628 (1997)
STATE of Louisiana, Appellee,
v.
Michael RHODES, Appellant.
No. 29207-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
Rehearing Denied February 20, 1997.
*631 Bobby L. Culpepper & Assoc. by Bobby L. Culpepper, Teresa C. Carroll, for Appellant.
Richard Ieyoub, Attorney General, Walter E. May, Jr., District Attorney, C. Glenn Fallin, Assistant District Attorney, for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
After a three-day jury trial, defendant, Michael Rhodes, was convicted of second degree murder, LSA-R.S. 14:30.1. The trial judge sentenced defendant to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction. We affirm.

FACTS
On June 18, 1995, at approximately 10:30 p.m., the victim, Carl McClendon, and his two friends, Alicia Casey and Clara Myles, arrived at an Arcadia nightclub known as Bobby's Quik Stop in a rental car driven by Ms. Myles. The three entered the club and exited shortly before midnight. Defendant and his friend, Victor Thomas, arrived at Bobby's in defendant's car between 11:00 and 11:30 that night, but did not enter the club.
At trial, the defendant testified that as the club was closing, either Carl McClendon or Kenny Crawford asked him once to move his car because he was blocking the cars of other patrons who were trying to leave the club parking lot. The defendant could not move his car, however, because he was blocked by another car. The defendant and McClendon began arguing and cursing each other. Defendant stated that he thought the argument concerned a woman and not moving the car. This argument lasted about six to ten minutes, after which McClendon walked away.
Defendant stated that he stood there talking with a friend and then went to get into his car when McClendon walked up to him again. The defendant claims that McClendon was mumbling and walking towards him at a fast pace with a beer bottle in one hand and his other hand behind his back. Defendant stated that he raised his hand and told McClendon to "go on." McClendon allegedly knocked the defendant's hand away and then began to bring his other hand from behind his back. The defendant stated that he had a gun in his pocket and when he thought McClendon was pulling a weapon from behind his back, he pulled out his gun and it discharged. The defendant was not certain if he pulled the trigger and he said that he did not intend to kill McClendon. After the gun was fired, the defendant feared the crowd would attack him so he ran off into the woods where he dropped the gun while running. *632 Later that morning, defendant, accompanied by his parents, surrendered to officials at the Bienville Parish Sheriff's Office.
Tracey Hampton, a life-long friend of defendant, corroborated defendant's testimony. He testified that when he exited the club he heard McClendon and the defendant talking about moving defendant's car. Defendant allegedly told McClendon that he would move the car when he was ready and then got into his car. Hampton stated that McClendon walked away from defendant's car, walked around a van parked nearby and returned to defendant's car. Hampton said that McClendon had a beer bottle in one hand and the other hand behind his back when he stepped back up to the car and said something to the defendant. The defendant told McClendon to go away and McClendon hit the defendant's hand with his hand that was holding the beer bottle and the gun discharged. Hampton said he never saw anything in McClendon's other hand.
Joe Moore, the owner of the club, testified that, as he was checking the doors of Bobby's, he saw defendant shoot McClendon. He stated that McClendon was bending down to talk with defendant who was sitting in his car. Moore said that when McClendon raised up from the car the defendant stood up and shot him. Moore did not see McClendon make any aggressive moves and did not see him with a weapon.
Donna Richardson, and most of the other witnesses, present a different story than those of the defendant, Hampton and Moore. Richardson testified that she saw the two men talking in front of the defendant's car. The men talked for about thirty minutes and did not appear to be arguing. She then saw McClendon raise his hands and heard him tell defendant not to shoot anyone. She heard defendant say something about closing the club and then he shot McClendon. She never saw McClendon leave and then return to defendant's car, and she did not see McClendon with a weapon or make any threatening moves toward the defendant.
Kenneth Crawford testified that he, McClendon and a couple of friends were trying to leave the club parking lot, but were unable to do so because defendant's car was blocking their exit. McClendon approached the defendant and asked him to move his car. Defendant said he was going to shut the club down and that he was not going to move his car. Defendant refused a second request by McClendon and even refused to give McClendon the keys so that he could move the car himself. The two men began arguing about moving the car and exchanged profanities. Eventually, the defendant shot McClendon. Crawford said the defendant and McClendon were standing by the rear of the defendant's car and McClendon had nothing in his hands, not even a beer bottle. Crawford also stated that he never saw the men touch each other and that he never saw McClendon leave and walk around a van.
Alicia Casey testified that when she walked out of the club, the defendant was arguing with an unidentified female about moving his car. When the defendant refused to cooperate with the female, McClendon approached him in an attempt to get him to move the car. The defendant told McClendon he was not moving a thing and that he would shut the place down. After the defendant turned around and got something out of his car, McClendon took two steps toward him, then backed away and the defendant shot him. She said that upon seeing defendant with the gun, McClendon held up his hands and backed away. Casey said that McClendon did have a beer bottle in his hand, but he did not have a weapon. She also stated that the men were arguing near the front of defendant's car and that McClendon never left and walked around a van.
Clara Myles testified that when she exited the club she saw the unidentified female arguing with the defendant, and then McClendon approach the defendant. She said that after the men began talking, the defendant went to his car and got something and then shot McClendon, who was standing by the front of defendant's car. She never saw McClendon make any moves toward the defendant.
Travis Sullivant, a deputy sheriff with the Bienville Parish Sheriff's Department and one of the officers who responded to the disturbance at the club, testified that he *633 found a .25 caliber pistol in the woods and called the investigating officer back to the scene to retrieve the pistol. Gary Hill, the investigating officer from the Bienville Parish Sheriff's Department for this incident, testified that he did retrieve the pistol from the woods and that it had no clip. Richard Beighley, a criminalist with the North Louisiana Crime Lab and an expert in firearms identification, testified that he examined the bullet found in McClendon's body with bullets fired from the pistol found in the woods and determined that the bullet found in McClendon's body was fired from the .25 caliber Raven pistol.
Finally, Dr. Steven Hayne, an expert in anatomic, clinical and forensic pathology, testified that he performed an autopsy on McClendon's body. Dr. Hayne testified that he found a gunshot wound on McClendon's left chest that showed no signs of tattooing or other residue on the side of the wound. This lack of tattooing and residue indicated that it was a distant gunshot wound. Dr. Hayne stated that the distance was no closer that approximately one foot from the end of the muzzle of the gun to the wound site. Dr. Hayne also testified that he saw no evidence of a fight, such as scars or bruises on the hands, no tears of the skin or fingernails and no foreign tissue underneath the fingernails. Dr. Hayne further testified that the cause of death was the gunshot wound to the chest.

DISCUSSION
Sufficiency of the Evidence
Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, arguing to the trial court that the evidence viewed in the light most favorable to the state would not reasonably permit a guilty verdict. The trial judge denied both motions. Defendant objected and now assigns the denial of these motions as error on appeal, again arguing that the evidence is insufficient to support the conviction.
When the defendant challenges both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Huff, 27,212 (La.App.2d Cir. 8/23/95), 660 So.2d 529. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).
The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard, now legislatively embodied within La.C.Cr.P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). All evidence, both circumstantial and direct, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
Defendant was charged with second degree murder, the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. Defendant admits he shot McClendon, but argues he did so in self-defense.
A homicide is justified when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20; State v. Cotton, 25,940 (La.App.2d Cir. 3/30/94), 634 So.2d 937. When a defendant claims self-defense, the state has the burden of establishing beyond a reasonable doubt that he did not act in self-defense. State v. Cotton, supra; State v. Harris, 26,411 (La. App.2d Cir. 10/26/94), 645 So.2d 224. The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination *634 of guilt. State v. Cotton, supra; State v. Harris, supra.
In the present case, only defendant and Tracey Hampton, defendant's longtime friend, presented any testimony to support defendant's self-defense theory. Defendant testified that McClendon walked away and then returned mumbling and hurriedly walking towards him. Defendant could not see what was in one of McClendon's hands, and shot McClendon as McClendon brought his hand around in front of him. Hampton testified that he saw McClendon go behind a van and return to defendant's car where he said something to the defendant and made a motion toward him. Hampton said that McClendon hit defendant's hand and then the gun discharged. While Hampton specifically testified that the shooting looked like self-defense, he never saw anything in McClendon's other hand.
All witnesses who saw the events leading up to the shooting testified that they did not see McClendon with a weapon. Even the defendant could not say with certainty that McClendon had a weapon. In addition, Joe Moore testified that he did not see McClendon make any aggressive acts toward defendant. Donna Richardson did not see McClendon hit or push the defendant but, instead, saw McClendon raise his hands and tell defendant not to shoot anyone. Kenneth Crawford testified that he did not see McClendon leave, go behind a van and then return to defendant's car. Crawford also stated that McClendon did not do anything to make the defendant shoot him. Alicia Casey testified that before the shooting McClendon did not try to grab defendant and was not "talking crazy" to defendant. She said that McClendon did take two steps toward defendant, but he stepped back and was shot. Casey testified that McClendon did not have a gun with him that night and that there was not one in the car in which he rode to the club. She also stated that she did not notice a weapon on McClendon as he was lying on the ground after being shot.
Dr. Hayne's testimony that this was a distant gunshot wound is also contrary to the self-defense theory. He concluded that the distance between the end of the gun and McClendon was at least one foot; thus, the two men were not close enough to each other to be fighting. Dr. Hayne also testified that he found no evidence of a fight, such as scars or bruises, on McClendon's hands.
The jury chose to believe the state's witnesses and to disbelieve the testimony of the defendant and Hampton. The evidence adduced at trial was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant shot and killed McClendon, that defendant had the specific intent to kill or cause great bodily harm and that the crime was not committed in self-defense.
These assignments of error lack merit.

Hearsay Statements of Joe Moore
In two of his assignments of error, defendant argues the trial court erred by allowing into evidence testimony regarding statements made by Joe Moore after the shooting. Over defendant's objections, the trial court allowed Deputies Sullivant and Boykin to testify about these statements. Deputy Sullivant stated that when he arrived at the scene, he was approached by Moore who told him to "call an ambulance, that Michael Rhodes had just shot somebody." Deputy Boykin testified that when he arrived at the scene Moore approached him and told him that "Michael had shot a black male for no reason at all."
The state argues that these statements are excited utterances and thus exceptions to the hearsay rule. La.C.E. art. 803(2). Although the excited utterance exception to the hearsay rule usually involves statements by a victim, courts of Louisiana have applied the exception to statements similar to those in the present case. See State v. Bean 582 So.2d 947 (La.App. 2d Cir.1991), where this court held that a statement of a four-year-old witness to a murder was admissible as excited utterance; State v. Leonard, 543 So.2d 975 (La.App. 3d Cir.1989), where court held statements made by witness, the wife of defendant, to a murder were admissible as excited utterances.
An excited utterance is not excluded by the hearsay rule. It is defined as a "statement relating to a startling event or *635 condition made while the declarant was under the stress of excitement caused by the event or condition." La.C.E. art. 803(2); State v. Beason, 26,725 (La.App.2d Cir. 4/7/95), 653 So.2d 1274. This exception requires an event sufficiently startling to render a declarant's normal reflective thought process inoperative. In addition, the statement of the declarant must have been a spontaneous reaction to the event and not the result of reflective thought. State v. Beason, supra; State v. Reaves, 569 So.2d 650 (La.App. 2d Cir.1990), writ denied, 576 So.2d 25 (La.1991).
Deputy Sullivant testified that it took him less than a minute from the time he received the call of the disturbance until he arrived at Bobby's. When he exited his car, he was approached by Joe Moore, who appeared to him to be very scared and excited. Deputy Boykin also testified that when he arrived at the scene he was approached by Moore who he described as being very excited. Moore himself testified that he witnessed the shooting. Moore witnessed the startling event of a shooting and made his statements shortly thereafter when the deputies arrived on the scene. We conclude that these statements were excited utterances under art. 802(2) and, thus, were admissible.
We also conclude that even if the statements were not excited utterances and, thus, not exceptions to the hearsay rule, the allowance by the trial court of the testimony regarding the statements was harmless error. The declarant, Moore, did testify at trial and was subject to cross-examination by the defendant. State v. Tate, 25,765 (La. App.2d Cir. 2/23/94), 632 So.2d 1213.
These assignments of error lack merit.

Hearsay Statement by Crowd and Testimony Regarding Mood of the Crowd
Defendant next contends that the trial court erred in allowing, over defendant's objections, Deputy Boykin to testify regarding a statement made by an unidentified person in the crowd after the shooting and in allowing Deputy Sullivant and Paramedic Leith to testify regarding the mood of the crowd. When asked what he heard the crowd say, Deputy Boykin responded, "That Mike had shot the guy for no reason." When asked about the mood of the crowd, Deputy Sullivant responded, "Some were angry, some were afraid and some were excited." In response to the same question, Paramedic Leith stated, "When we got there, we ... they seemed to be, they were hollering. As soon as we got out I heard somebody holler...."; at which time the defendant raised a hearsay objection.
As for the statement from the crowd, the prosecutor asked Officer Boykin, "Did the crowd say something to you?" Defendant timely objected. The state argued to the trial court that statements from the crowd were admissible as excited utterances pursuant to La.C.E. art. 803(2). After argument, the district judge overruled defendant's objection. The state then asked Officer Boykin, "What did you hear that crowd say?" Officer Boykin replied, "That Mike had shot the guy for no reason."
Defendant argues this statement was erroneously admitted hearsay. The state argues it was admissible, both as an excited utterance pursuant to La.C.E. art. 803(2), and as a "thing said or done" pursuant to La.C.E. art. 801(D)(4). We, however, pretermit a discussion of whether this statement was an excited utterance or "things said or done" because we conclude that even assuming, arguendo, that it was error for the trial court to allow the testimony, it was harmless error beyond a reasonable doubt. The hearsay was merely cumulative of the testimony elicited from witnesses with personal knowledge of the events at issue. Beason, supra.
Defendant does not deny shooting McClendon, and all the witnesses testified that defendant did shoot McClendon. In addition, Donna Richardson stated that McClendon never made any threatening moves toward defendant and that he did not have a weapon. Kenneth Crawford testified that McClendon never touched defendant and that the defendant brought out his gun for no reason at all. Alicia Casey said that McClendon did not have a weapon and that once he saw defendant with the gun McClendon held up his hands and backed away. Finally, Clara Myles testified that McClendon did not have *636 a weapon and that he did not make any moves toward defendant.
Defendant contends that the admission of the statement Officer Boykin heard from the crowd violated his right to confront the witnesses against him. See U.S. Const. amend. VI; La. Const. Art. I, § 16. Confrontation Clause violations do not warrant reversal if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. See Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Factors to be considered in determining whether the error was harmless include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted and the overall strength of the prosecution's case. Id. at 684, 106 S.Ct. at 1438.
Officer Boykin's testimony regarding the statements by unnamed individuals in the crowd, as previously noted, was merely cumulative of the extensive eyewitness testimony which, if believed by the jury, more than sufficed to definitively establish defendant's guilt. Even if this testimony were inadmissible under the Confrontation Clause, its likely effect on the jury was marginal at best. We conclude that any Confrontation Clause error in this case was harmless beyond a reasonable doubt.
As for the testimony regarding the mood of the crowd, defendant argues that this evidence was irrelevant. Over defendant's objection based on relevancy, the trial court allowed Deputy Sullivant to describe the mood of the crowd as "[s]ome were angry, some were afraid and excited." Thomas Leith, a paramedic who answered the dispatch to Bobby's Quik Stop, also testified about the mood of the crowd by stating, "When we got there, we ... they seemed to be, they were hollering. As soon as we got out I heard somebody holler...." At this point in Leith's testimony, defendant raised a hearsay objection to Leith's repetition of what he had heard from the crowd, but did not object on the basis that Leith should not be able to testify as to the mood of the crowd.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.C.E. art. 401. The trial judge determines whether evidence is relevant by deciding whether it bears a rational connection to the fact which is at issue in the case. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, ___ U.S. ___, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996). This determination is "made by the standards of logic and experience." State v. Caldwell, 504 So.2d 853, 855 (La.1987). The trial judge's determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Mosby, 595 So.2d 1135 (La.1992); State v. Johnson, 27,522 (La.App.2d Cir. 12/6/95), 665 So.2d 1237.
Deputy Sullivant's testimony regarding the mood of the crowd had a rational connection to facts at issue in the case. It allowed him to explain his actions and set the context for the rest of his testimony. The trial judge's determination that this evidence was relevant does not represent a clear abuse of discretion. As for Leith's testimony, defendant's relevancy objection is not properly before the court because defendant did not object to Leith's testimony on the basis of relevancy. See La.C.E. art. 103(A)(1); La.C.Cr.P. art. 841; see also State v. Toney, 26,711 (La.App.2d Cir. 3/1/95), 651 So.2d 387 (new basis for objection cannot be argued for the first time on appeal). Even if it were before the court, it would be meritless for the same reasons the objection to Deputy Sullivant's testimony is meritless. The decision to admit Mr. Leith's testimony regarding the mood of the crowd, in the absence of a contemporaneous objection from the defendant, does not constitute a clear abuse of discretion.
These assignments of error lack merit.
*637 Hearsay Statements of Officer Hill
The defendant failed to brief two separate assignments of error regarding hearsay statements related by Officer Gary Hill; thus, they are deemed abandoned in accordance with URCA Rule 2-12.4. State v. Schwartz 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).

State Impeaching Own Witness
The state called Tracey Hampton as a witness and questioned him about statements made by him to Latreceia Kurtz after the shooting. Defense counsel objected on the grounds that the state should not be allowed to impeach its own witness. The trial court overruled the objection and Hampton testified that he did not recall seeing Kurtz shortly after the shooting and telling her that defendant had "messed up," but he may have told people that defendant had shot McClendon. After Hampton testified, the state called Latreceia Kurtz who said that she asked Hampton after the shooting what had happened and he told her, "Uh, uh, uh, he done messed up, he shouldn't have shot that boy."
Defendant failed to brief this assignment of error and this court may, thus, consider it abandoned under URCA 2-12.4. It should be noted that while traditionally one could not attack his own witness, unless the witness was hostile (formerly LSA-R.S. 15:487) or there was surprise (formerly LSA-R.S. 15:487-488), the current law states, in pertinent part, "The credibility of a witness may be attacked by any party, including the party calling him." La.C.E. art. 607.
Introduction of and Testimony Regarding Lab Test Patterns on Bullet
Defendant argues that the trial court erred in allowing Richard Beighley, the state's expert witness in firearms identification, to testify regarding the results of gun powder residue tests run on McClendon's shirt, and in allowing the admission of these test results as evidence. The defendant objected when the state began questioning Mr. Beighley about tests he performed to determine the distance from the victim at which the gun was fired. Since no ammunition casings were ever found at the scene of the shooting or in the gun, it was impossible for Beighley to perform a test using the same brand of ammunition and give distance range for that brand of ammunition. For this reason, State's Exhibit 7, the crime lab report, states that the distance determination on the victim's shirt was pending until the submission of additional information regarding the brand of ammunition used in the shooting.
Since the brand of ammunition used was never discovered, Mr. Beighley contacted the assistant district attorney ("ADA") and asked if the ADA wanted him to perform sample test firings of the gun using a random brand of ammunition in order to establish a distance range. The ADA approved the tests and Mr. Beighley apparently telephoned the ADA to relate the results. At trial, Mr. Beighley concluded that the test indicated that the fatal shot was fired from a distance of one to four feet from the victim. He also stated that had he not performed any tests, he would have estimated the distance to be anywhere from one and one-half to six feet. Defendant objected to Mr. Beighley's testimony on this point since he had not been notified of the results of these tests until the morning of the day the state sought to introduce them at trial.
The ADA argued that Mr. Beighley had not issued a report to him, but had simply performed the tests and informed him of the results. The court inquired, "But you advised Mr. Culpepper that you had no such tests, correct?" The ADA responded, "We don't have a report." The ADA further explained that because Mr. Beighley did not know the type of ammunition used to shoot McClendon, a random ammunition was used to make representative test firings so that Mr. Beighley could make an "estimate." Again the ADA stated that Mr. Beighley had not issued a report.
Defendant admitted that the test result distance was more favorable to him than Mr. Beighley's previous estimate of one and one-half to six feet but, nonetheless, objected because he had not received any notice and Mr. Beighley had "not been able to run any exact tests." The district court allowed the evidence stating that the defendant should *638 have been aware new information might surface since the original lab report reflected that the distance determination was "pending" and, further, that the defendant was informed of the results that morning.
La.C.Cr.P. art. 719 requires the state to provide the defendant with copies of test results that are in the possession, custody, control or knowledge of the district attorney and intended for use at trial. The phrase "intended for use at trial" has been given a broad meaning; thus, pursuant to La.C.Cr.P. art. 719, an expert's report must be disclosed "`if related to the witness' testimony at trial.'" State v. Foret, 628 So.2d 1116 (La.1993), quoting State v. Lingle, 461 So.2d 1046 (La.1985). Article 719 imposes a continuing duty on the district attorney to promptly notify the other party and the court of the existence of additional evidence discovered or obtained prior to trial. La.C.Cr.P. art. 729.3. Should the state fail to comply with this duty, the court may grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed or enter such other order, other than dismissal, as may be appropriate. La. C.Cr.P. art. 729.5(A).
The imposition of sanctions is within the discretion of the court and therefore a showing of prejudice by virtue of the court's ruling is necessary before the reversal of a conviction is warranted. State v. Norwood, 396 So.2d 1307 (La.1981). Non-disclosure does not warrant automatic reversal but where the defendant is lulled into misapprehension of the strength of the state's case as a result of non-disclosure, the defendant is entitled to reversal. State v. Phagans, 412 So.2d 580 (La.1982); State v. Strickland, 398 So.2d 1062 (La.1981); State v. Davis, 399 So.2d 1168 (La.1981). The effects of a discovery violation may be remedied by effective cross-examination. State v. Powell, 598 So.2d 454 (La.App. 2 Cir. 1992).
In the present case, the state's expert in anatomic, clinical and forensic pathology, Dr. Hayne, testified that McClendon died as a result of a "distant gunshot wound." He stated that he found no gun powder residue on the shirt or signs of tattooing or gun powder residue around the wound, and he concluded that this meant the distance from the end of the gun to the victim was no less than one foot. The jury was also made aware of the problems with the test run by Mr. Beighley in that the exact brand of ammunition was not known. The following exchange took place between the ADA and Mr. Beighley:
Q. Okay, Mr. Beighley, that is not exactly an accurate test because you did not know what bullet was actually being used when the gun was actually fired on the night of June the 18th, is that right?
A. As far as, I have the bullet but I do not know or was given the information of what brand of ammunition was fired. There was a number of different brands of 25 Caliber ammunition. That would have been noted either in some ammunition that was submitted with the weapon or a fired cartridge case because they could have been identified as having been fired in that weapon.
Q. So, therefore, in your report when you say distance determination on the shirt in Item No. 3 is pending submission of additional evidence and if you weren't submitted any additional evidence being because there was no cartridge shell found or no additional bullet found in the gun, that's what you have in your report was the reason for that?
A. That's correct.
Q. Okay. So just as a random picking of any shell that you had at your office, that's how you made that report?
A. In this particular case these test firings were done with 25 Caliber Federal Ammunition.
Q. Okay. And would the test be different depending on different types of ammunition?
A. It could.
Finally, Mr. Beighley gave not only the distance range resulting from his test, but also his estimated distance range had this test never been done. The defendant admits that *639 he benefits from the distance range resulting from the test.
We conclude that even if the state failed to inform defendant of a test result and thus committed a discovery violation, the violation was harmless error. The testimony of Dr. Hayne established that the distance was at least one foot and the jury was made aware of the problems with the test performed by Mr. Beighley. The jury was further informed of both the distance range without the test and the distance range resulting from the test; the range from the test benefitted defendant by placing McClendon closer to the defendant at the time of the shooting and, thus, supported defendant's self-defense theory.
These assignments of error are without merit.

Introduction of Post-Mortem Examination of Victim
Dr. Steven Hayne testified that he performed the autopsy on McClendon. The state attempted to introduce Dr. Hayne's autopsy report into evidence. Defendant objected because Dr. Hayne was present to testify, arguing both that the report constituted hearsay and that the report was irrelevant. The trial court overruled the objection and admitted the report into evidence.
Defendant now argues that allowing the jury to read the autopsy report, in addition to hearing the testimony of the coroner and viewing autopsy photographs, was "highly prejudicial and inflammatory" and should have been excluded pursuant to La.C.E. art. 403.
Since defendant did not seek to exclude the autopsy report in the trial court on the ground that it was unduly prejudicial, he is not entitled to argue this basis for his objection on appeal. La.C.E. art. 103(A)(1); La. C.Cr.P. art. 841; State v. Toney, supra. Were he entitled to do so, his argument would have no merit.
Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La.C.E. art. 403. In weighing the relative probative value of proffered evidence against its probable prejudicial effect, whether the evidence is merely cumulative is a factor to be considered. State v. Volentine, 565 So.2d 511 (La. App. 2d Cir.1990).
A coroner's report is competent evidence of death and the cause of death. La.C.Cr.P. art. 105. It is excepted from the hearsay rule and is admitted in evidence as proof of death and the cause thereof. State v. Kelly, 375 So.2d 1344 (La.1979). The coroner or one of the coroner's deputies may testify as to the victim's death or the cause thereof, even where the testifying witness did not perform the autopsy or prepare the report. See State v. Ducre, 596 So.2d 1372, 1381 (La.App. 1st Cir.), writ denied, 600 So.2d 637 (La.1992).
The trial court properly admitted the coroner's report pursuant to La.C.Cr.P. art. 105 to prove death and the cause of death. Defendant articulates no basis for his argument that he suffered unfair prejudice within the meaning of La.C.E. art. 403. The report was merely cumulative of Dr. Hayne's testimony. Furthermore, a coroner's report is statutorily exempted from the hearsay prohibition. Dr. Hayne was properly allowed to testify as to the report's contents before it was admitted.
This assignment of error has no merit.

Jury Instructions
Defendant did not designate as part of the record a verbatim transcript of the trial court's instructions to the jury. The record, however, does contain a set of instructions signed by the trial judge, which apparently were read to the jury. Defendant assigns various errors arising from these instructions.

Consequences Instruction
Defendant relates in brief that the district judge instructed the jury "that the jury could infer that the defendant intended *640 the natural and probable consequences of his act." He argues that this instruction was impermissible in the light of Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
The Louisiana Supreme Court recently considered and rejected this precise argument in State v. Mitchell, 94-2078 (La.5/21/96), 674 So.2d 250. The court explained that Sandstrom held that the trial judge erred in instructing the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts," since this instruction could be considered to be a mandatory presumption by the jury and thus improperly shift the burden of proof from the state. See Mitchell, supra at 255. By contrast, an instruction which informs the jury it may infer that the defendant intended the natural consequences of his acts creates no such presumption. The instruction given in this case, like the instruction approved in Mitchell, does not set forth a conclusive presumption shifting the burden of proof from the state to the defendant.
The other case on which defendant relies to support his argument, Connecticut v. Johnson, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) is not on point. In Johnson, the Connecticut Supreme Court had reversed a defendant's conviction where the trial court's instructions to the jury violated Sandstrom. Five United States Supreme Court Justices voted to affirm this decision. The majority did not agree on a rationale, but a four-Justice plurality reasoned that a jury instruction violating Sandstrom can never be treated as harmless error. Johnson, at 88, 103 S.Ct. at 978. Because no Sandstrom violation took place in this case, Connecticut v. Johnson is not applicable.
The defendant next argues that the trial court erred in refusing to give requested jury instruction numbers 1, 6, 7 and 8. La.C.Cr.P. art. 802 requires the trial court to charge the jury as to the law applicable to the case. In addition, La.C.Cr.P. art. 807 states that a requested special charge shall be given by the trial court if it does not require qualification, limitation or explanation. We consider each requested jury instruction in turn.
Requested Jury Instruction No. 1
Defendant requested the following instruction:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against a person, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense.
This requested instruction was based on LSA-R.S. 14:19. Defendant argues it was error for the trial court to refuse to give this instruction.
This argument has no merit. LSA-R.S. 14:19 sets out the standard to be applied in determining whether the use of force or violence on the person of another is justified only when such force or violence does not result in death. State v. Guinn, 319 So.2d 407 (La.1975). Where the use of force or violence results in death, the stricter standard prescribed by LSA-R.S. 14:20 applies. Id. When death results, the standard is whether the defendant "reasonably believed" that he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to save himself. LSA-R.S. 14:20; State v. Ford, 368 So.2d 1074 (La.1979). The trial court properly refused to charge the jury based on LSA-R.S. 14:19 because McClendon died as a result of defendant's use of force.

Requested Jury Instruction No. 6
Defendant requested that the jury be instructed:
The reputation of Carl McClendon in the community as a troublemaker and violent person may be considered by you in determining whether or not Michael Rhodes acted in self-defense.
It was not error for the trial court to refuse to give this instruction. Defendant never introduced evidence as to McClendon's reputation in the community; thus, this instruction was not necessary.

Requested Jury Instruction No. 7
Defendant's seventh requested jury instruction provided:

*641 It is not necessary that you find that Carl McClendon was armed with a dangerous weapon at the time of the incident in question for you to find that the defendant acted in self-defense.
The trial court properly refused to give this charge.
The trial court's instruction regarding self-defense adequately stated the law. Furthermore, were the trial court to have given the requested instruction, it would have had to amplify and explain the requested charge so as to include the critical requirement that the defendant reasonably believed he was in imminent danger of losing his life or receiving great bodily harm and that deadly force was necessary to save himself. LSA-R.S. 14:20. The proposed charge does not fulfill the requirements of La.C.Cr.P. art. 807 that the requested charge not require qualification, limitation or explanation. The district judge, therefore, had no obligation to accept it. See State v. Sanders, 431 So.2d 833, 835 (La.App. 2d Cir.), writ denied, 439 So.2d 1076 (La. 1983).

Requested Jury Charge No. 8
Defendant's eighth requested jury instruction is as follows:
You may consider whether or not Carl McClendon acted as if he had a weapon in his hand in determining whether or not the defendant acted in self-defense.
The trial court did not err in failing to give this instruction for the same reasons it did not err in failing to give the seventh requested instruction. The trial court's charge on self-defense adequately stated the law. Furthermore, had the trial judge given this instruction, he would have had to amplify and explain it further in order to fully state the law of self-defense. The trial court did not err in failing to give this instruction. See Sanders, supra.
This assignment of error lacks merit.

Errors Patent
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, defendant's conviction and is affirmed.
AFFIRMED.
BROWN, J., concurs with reasons.
WILLIAMS, J., concurs in the result.
BROWN, Judge, concurring.

IMPEACHMENT
As noted in our opinion, in the past, one could not attack his own witness, unless hostile (former 15:487) or surprised (former 15:487-488). La.C.E. art. 607 changed that and now, "[t]he credibility of a witness may be attacked by any party, including the party calling him." In the official comments to article 607, the following need for judicial discretion is prophesied:
It (article 607) substantially changes Louisiana's traditional common-law approach to attacking the credibility of witnesses. Abuse of this provision should be prevented by the exercise of judicial discretion. For example, the court should prohibit a party's attacking the credibility of his own witness when it is clear that he is doing so primarily with the intention or effect of adducing otherwise inadmissible evidence, typically a prior inconsistent statement, on the pretext of attacking credibility.
In this case, the state knew that Tracy Hampton was the defendant's long time friend and that he was going to testify that defendant acted in "self defense." The state called Hampton and then called Latreceia Kurtz to impeach Hampton with a prior statement that Hampton had told her that defendant had "messed up" and should not have shot the victim.
In this case, the state's motivation was to call all witnesses present at the shooting. The state's purpose was both legally and morally correct and the trial court properly exercised its discretion in allowing the impeaching testimony. In this case, the abuse warned of in the official comments did not occur; however, judicial discretion should guard against the use of article 607 to create a defense or case by calling a witness for the *642 sole purpose of getting an otherwise inadmissible prior inconsistent statement before the jury.
HEARSAY
I cannot agree that Moore's opinion to Deputy Boykin, that the defendant shot the victim without justification, qualifies as an excited utterance. Deputy Sullivan was the first officer to arrive at the scene and Moore explained to him the situation. Thereafter, Deputy Boykin arrived and Moore then expressed his opinion on the lack of justification for the shooting. However, as noted in our opinion, Moore testified at the trial and stated that he did not see the victim with a weapon; that the victim did not move aggressively toward the defendant; and that he believed that the defendant did not act in self defense. His belief at trial was rationally based on his perception and rightly allowed. La.C.E. art. 701. Thus, the admission of the hearsay statement to Deputy Boykin was harmless error.
The "crowd's" opinion that the shooting was "for no reason" is hearsay. If the "mood" of the crowd was relevant, then statements from the crowd could show that "mood;" however, except to explain why someone acted or reacted in a particular way, the "mood" of the crowd is irrelevant. In this case, the "mood" of the crowd explained nothing and had no bearing on relevant actions. Many of the people who testified at trial were part of the "crowd," and after considering the totality of the evidence and the lack of prejudicial effect, the erroneous admissions of the opinion of the "crowd" and its "mood" were harmless.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.