LOLLEY, J.
| jThis appeal arises out of the First Judicial District Court, Caddo Parish, State of Louisiana. The defendant, Alasundria Avery, initially was charged with the first degree murder of her infant daughter, Denise Avery. She ultimately pled guilty to manslaughter. Following a sentencing hearing, Avery was sentenced to 30 years at hard labor, with the first 10 years to be served without benefit of parole or suspension of sentence. A timely motion to reconsider sentence was denied. This appeal ensued. For the reasons set forth herein Avery’s conviction is affirmed. Her sentence is amended to conform to La. R.S. 14:30(B) and, as amended, affirmed.
Facts
On October 21, 2011, 19-year-old Ala-sundria Avery called 911 to report that her one-year-old daughter, Denise, was unconscious and possibly having a seizure. When EMTs arrived, Denise was found lying on the coffee table with Avery and a man, later identified as LaMorris Edwards, standing by the child. The infant was taken to LSU-HSC where she was pronounced dead. Denise presented with horrible signs of abuse. She had sustained lashings on her buttocks, abdomen and head that resembled third-degree burns. Her vagina was swollen and red and her urine was dark colored. Upon questioning that same night, Avery admitted that she and Edwards had beaten Denise with a belt and shoe. Avery claimed that Edwards beat her as well and forced her to beat Denise and, when she did not hit the child forcefully enough, he would hit the child or make Avery hit her harder. Denise’s autopsy report showed that she died of “blunt force |2injuries involving the face, head, sides of abdomen, back, buttocks and vaginal area.”
Avery was arrested and charged with first degree murder. Ultimately, Avery was formally indicted for the first degree murder of Denise, but later the state amended the indictment to second degree murder. She eventually pled guilty to manslaughter. A sentencing hearing was held on February 20, 2014, at which the trial court heard testimony from several witnesses.
The state’s first witness to testify was Shreveport Police Homicide Detective Rod Demery, who stated that he first came into *573 contact with Denise at LSU-HSC. He immediately noticed bruising and broken skin on her buttocks, as well as severe redness to her vaginal area. Detective Demery interviewed Avery, during which Avery admitted that she beat Denise and, specifically, that she beat her on her buttocks and vagina with a belt and shoe. Avery also told Det. Demery that she beat Denise at the behest of her boyfriend, Edwards.
The state’s second witness was Dr. James Traylor, who performed the autopsy on Denise and was accepted by the court as an expert in forensic pathology. Dr. Traylor testified that the cause of Denise’s death was blunt force trauma to her face, head, abdomen, back, buttocks and vagina, and that the injuries were inflicted within 24 hours of her death. Additionally, Dr. Traylor found swelling in Denise’s brain and hemorrhaging within the soft tissue surrounding her skull. He further testified that Denise suffered distinct external injuries to her vagina, but, that internal bleeding from the trauma to her abdomen had pooled toward her vagina, which pooling of | sblood also contributed to its severe redness. When questioned as to whether Denise’s injuries could have been pre-existing, Dr. Traylor answered in the negative. He stated that he found no indication of old injuries or previous abuse to the tissues; rather, Dr. Traylor confirmed that the injuries had been sustained within 24 hours of the autopsy, which was performed the night of the death.
The defense presented testimony from several witnesses establishing the environment in which Avery was raised. As related by the witnesses, Avery and her two sisters were raised by their mentally impaired mother, Denise Salone. The family home was unkempt, which witnesses described as being scattered with dirty dishes, dirty clothes and roaches. According to people close to her, including school personnel, Avery had very poor hygiene and wore soiled clothing that did not fit her. The testimony also established that Avery was sexually abused by her own brother. The record indicates that her brother may have been the father of Denise. In addition, Avery was approximately seven months pregnant with another child at the time she was arrested, and the record reveals some indication that her brother was the father of the child she was carrying.
The testimony also showed that Avery had few friends. She was friends, however, with twin girls whom she met at Fair Park High School. The twins’ mother, Cassandra Walker, testified that a few months prior to Denise’s death, Avery and Denise moved into her home. Walker testified that Avery’s mother did not allow Avery to take any belongings with her when she left home, but Walker took Avery in and provided for her and the 14baby. During the time that Avery stayed with the Walkers, her hygiene improved, and Walker testified that Avery loved and cared for' Denise. However, Avery abruptly left the Walkers’ home and moved into a residence with Edwards. Walker testified that she did not know the reason for Avery’s move and further stated that the next time she saw or heard of Avery was when Denise’s death was in the news.
In addition, testimony was adduced at the sentencing hearing indicating that Denise was a healthy, adequately cared-for and appropriately developing infant until seven months of age. Pediatrician Holly Gill testified that Avery took Denise for her well-baby visits and her immunizations were kept current.
The last witness to testify was Dr. Robert Shaffer, an expert in forensic neurop-sychology who was retained to conduct a *574 mental examination of Avery. Dr. Shaffer testified that he interviewed and evaluated Avery in June of 2013. Testing revealed that Avery’s IQ was 67, she was not malingering, and she suffered from an abusive past. Dr. Shaffer stated that he also reviewed original health, school and social service documents regarding Avery’s personal and educational history. The social services documents included expert mitigation interviews, and summaries thereof, with Avery and other family members.
Dr. Shaffer gave fairly extensive testimony regarding his diagnoses of mild mental retardation, organic brain syndrome from lead poisoning, and post-traumatic stress disorder related to the sexual abuse by her brother. Afterwards, however, the state objected and moved to strike Dr. Shaffer’s | .¡testimony because none of the evidence on which he relied was produced during discovery. The trial court collected and reviewed the prior discovery requests and responses and concurred with the state that material on which any expert was going to rely was requested by the state and the defense failed to produce any such material. In fact, following an in-chambers discussion among defense counsel, the district attorney and the trial judge, defense counsel agreed on the- record that he had not disclosed to the state that Avery’s mental capacity was going to be an issue until he put Dr. Shaffer on the witness stand. The trial judge rejected defense counsel’s suggestion that the discovery rules only apply during the trial phase of the proceedings, as opposed to the sentencing phase, and sustained the state’s objection.
Thus, Dr. Shaffer’s testimony was limited to “questions concerning Defendant’s lack of appropriate response when the EMT arrived.” In other words, the trial court only considered Dr. Shaffer’s testimony about Avery’s “flat affect” when she was told that her child was not breathing. In his opinion, this reaction was not unusual for someone with Avery’s abusive past. Dr. Shaffer referred to Avery’s reaction as dissociation, a response wherein the person removes or detaches herself emotionally from the current trauma. Ultimately, Dr. Shaffer concluded that Avery knew it was wrong to kill Denise; she had the capacity to deflect culpability for her actions by attempting to blame her boyfriend; and, she had the cognitive ability to lie to avoid punishment.
| (After the testimony was complete, the sentencing hearing was continued until a later date, at which time closing arguments were made. Following argument, the trial court provided detailed and thorough reasons for sentencing and, as previously stated, imposed a sentence of 30 years at hard labor, with the first 10 to be served without parole or suspension of sentence. This appeal followed.
Discussion
Avery assigns three errors on appeal, namely: (1) the trial court erred in excluding/limiting Dr. Shaffer’s testimony based on the discovery violation; (2) the sentence is excessive; and, (3) it was error for the trial court to impose the first ten years of her sentence to be served without parole.

Exclusion of Expert Testimony

In her second assignment of error, Avery argues that the trial court abused its discretion in limiting Dr. Shaffer’s testimony to the “flat affect” of Avery when the EMTs arrived. She argües that her personal history, including her low IQ and mental retardation, troubled social history, neglect by her mother and sexual abuse by her brother are critical mitigating factors in sentencing. Avery submits that a “perceived pre-trial discovery violation cannot prevent the court from receiving necessary evidence for sentencing [.]” She urges that excluding this testimony deprived her of *575 her right to a particularized sentence and her right to rebut incorrect and prejudicial information. Failing to consider all of the mitigating factors, according to Avery, violated the mandate of La. C. Cr. P. art. 894.1. She further argues |7that her Sixth Amendment right to present witnesses on her behalf may not be unduly restricted by evidentiary or discovery rules. Finally, Avery suggests that any discovery violation should not prevent the evidence from being introduced at sentencing as opposed to during trial. We disagree.
Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge. State v. Morris, 28,312 (La.App.2d Cir.08/21/96), 679 So.2d 482. The trial court has wide discretion in fashioning a remedy. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Exclusion of the undisclosed evidence is sometimes an appropriate remedy. State v. Hooker, 623 So.2d 178 (La.App. 2d Cir.1993). The propriety of the remedy depends on the circumstances of the case. State v. Norwood, 396 So.2d 1307 (La.1981).
Louisiana courts have applied the discovery rules to the sentencing phase of criminal proceedings. Louisiana C. Cr. P. art. 724, documents and tangible objects, states:
When the court grants relief sought by the defendant under Article 718 of this Code, it shall upon the motion of the district attorney, condition its order by requiring the defendant to disclose to the state, and to permit or authorize the state, or an expert working with the state, to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies, or portions thereof, that are in the possession, custody, or
control of the defendant, and that the defendant intends to use in evidence at the trial.
Louisiana C. Cr. P. art. 726, notice of defense based upon mental condition, states:
| 8A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.
B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.
Louisiana C. Cr. P. art. 729.3, continuing duty to disclose, provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
Louisiana C. Cr. P. art. 729.5(A), failure to comply, provides:
*576 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
Louisiana C. Cr. P. art. 729.6, applicability of discovery, states:
The rules of this Chapter shall be applied in all criminal cases tried in the district, parish, and city courts. They shall be applicable following the institution of prosecution by the return of a grand jury indictment, the filing of a bill of information, or the filing of an affidavit charging an offense. However, the laTules of this Chapter do not apply in city and parish courts to cases in which prosecution is instituted by affidavit for violations of city or parish ordinances defining traffic offenses.
In State v. Knighton, supra, although the state was allowed at sentencing to introduce evidence that it failed to furnish during discovery (that defendant was unable to show prejudice), the supreme court recognized that the trial court could have imposed any of the relevant sanctions under La. C. Cr. P. art. 729.5. Id. at 1153.
Here, the trial judge did not abuse her discretion in excluding the sentencing hearing testimony of Dr. Shaffer based on his review of documents that were not furnished by the defense in response to the state’s discovery request. Furthermore, there was no prejudice to Avery in the exclusion of the evidence. State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982).
First, as correctly noted by the state, La. C. Cr. P. art. 729.6 expressly states that the discovery rules apply after the institution of prosecution and nowhere in the codal articles is there a limitation of applicability of those rules to the trial proceedings as opposed to sentencing. Furthermore, the jurisprudence supports application of the discovery rules to sentencing proceedings. State v. Knighton, supra; State v. Jackson, 1998-0004 (La.App. 1st Cir.11/06/98), 724 So.2d 215, writ denied, 1998-3056 (La.04/01/99), 741 So.2d 1283. Avery’s argument to the contrary is without merit.
Next, the record clearly reveals a discovery violation by the defense. Defense counsel hired Dr. Shaffer as early as June 2013, and at no time did | indefense counsel notify the state that it planned to produce evidence of the mental capacity of Avery, nor did it furnish copies of the myriad of documents relied upon by Dr. Shaffer in forming his opinions of Avery’s mental capacity. Just prior to the trial court’s ruling, defense counsel admitted that he had not provided such notice or furnished the documents to the state. The state was unable to prepare for cross-examination of Dr. Shaffer or to provide meaningful rebuttal evidence or testimony. While Avery argues that she was deprived of her right to confront witnesses and was precluded from presenting evidence in mitigation for sentencing, we note that the trial court was made aware of Avery’s diminished mental capacity, social history and prior sexual abuse through the testimony of lay witnesses who testified on behalf of the defense. In fact,, the trial court specifically cited these factors as mitigating considerations during Avery’s sentencing. Thus, there was no prejudice to Avery in the exclusion of Dr. Shaffer’s testimony. *577 Based on the circumstances of the case, the remedy of exclusion of the expert’s testimony on these issues was a proper remedy supported by statute and jurisprudence — it certainly was not an abuse of discretion. State v. Norwood, supra. Accordingly, this assignment of error is •without merit.

Excessive Sentence

Avery also argues that her sentence was excessive. The test imposed by the reviewing court in determining the ex-cessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judgeJjjis not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Williams, 48,525 (La.App.2d Cir.11/20/13), 128 So.3d 1250. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La. App.2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
Second, a sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Haley, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.01/15/02), 805 So.2d 166.
The trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 1999-1528, 1999-1753 (La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.05/12/04), 873 So.2d 939.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Williams, supra.
| ^Louisiana R.S. 14:31(B) provides:
B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.
The sentence imposed on Avery is not excessive. Before imposing sentence, the trial court summarized all of the testimony presented at the sentencing hearing, both in aggravation and mitigation of Avery’s offense. The trial court fully complied with La. C. Cr. P. art. 894.1. It specifically referred to the factors in Article 894 and noted in aggravation that Avery’s actions evidenced deliberate cruelty to her own infant child and that she knew or should have known that Denise was particularly vulnerable due to her young age. The trial court found that Avery used her status as mother to facilitate the offense against a completely defenseless victim. In mitigation, the trial court reiterated the testimony of the witnesses regarding Avery’s upbringing, prior abuse and that she had no prior offenses. The trial judge also considered that there had been no prior abuse of the child and recognized that, prior to Denise’s death, *578 Avery had provided adequate care for her, including well-baby healthcare. Based on all of the circumstances of the case, the trial court concluded that there was an undue risk of Avery committing another crime and that she was in need of correctional treatment provided by commitment to an institution. Finally, the trial court opined that a lesser sentence would deprecate the seriousness of the crime.
Moreover, the sentence is not unconstitutionally excessive. Avery twice benefited from a reduction in sentencing exposure — first, when the | ^charge was reduced from first to second degree murder, which prevented exposure to the death penalty, and, second, when she was allowed to plead guilty to manslaughter. Even so, she did not receive the maximum sentence of 40 years. Considering the absolutely heinous and unthinkable way in which Avery bludgeoned her own infant daughter to death with a belt and shoe, a sentence of 30 years does not shock the sense of justice and is not grossly out of proportion to the seriousness of the offense or a purposeless and needless infliction of pain and suffering, no matter the mitigating circumstances in this ease. This assignment of error is without merit.

Denial of Parole Eligibility

In her third assignment of error, Avery contends that the trial court erred in ordering that the first 10 years “will be served without benefit of parole or suspension of sentence” (emphasis added). Specifically, Avery argues that it was error to deny her eligibility for parole. As stated above, La. R.S. 14:31(B) provides, in pertinent part, that “if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years” (emphasis added). The state concedes that the sentence does not conform to the statute. Accordingly, the sentence should be amended to 30 years at hard labor, without the benefit of probation or suspension of sentence.
¡ ^Conclusion
For the foregoing reasons, the conviction of Alasundria Avery is affirmed. The sentence is amended to conform to La. R.S. 14:31(B) and, as amended, is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.